## WHITWORTH et ux. *vs.* HART et al.

1. When a cause is submitted to the Chancellor on an agreed state of facts, upon which he renders his decree, and it is not objected that the pleadings do not put these facts in issue, the objection cannot be raised in the Appellate Court to prevent a revision of his decree.

2. The husband's assent to an arrangement entered into by the wife and her brothers and sisters, respecting the division of her father's estate, cannot be presumed, in the absence of all evidence that he assented to or ratified it, or that it was beneficial to him, or that his wife was accustomed to act as his agent; and if the agreement is not binding upon the husband, it is not obligatory on the other parties.

3. Interest is but a just compensation for the withholding of the principal; and when the principal is ascertained to be due at a particular period, and remains unpaid without a sufficient excuse, interest follows as an incident.

ERROR to the Chancery Court of Monroe.
Heard before the Hon. J. W. LESESNE.

This bill was filed by the defendants in error, as heirs and next of kin of Matthew Bradley, deceased, against Albert B. Mitchell, his executor, and Margaret J. Whitworth, late his widow, and her subsequent husband, Isaac D. Whitworth, to set aside the will of the said Bradley, by reason of his unsoundness of mind at the time it was made, and for an account and distribution of his estate.

Answers were put in, and an issue *devisavit vel non* was awarded and tried at law, and a verdict of a jury had against

the will, which was duly certified to the Chancery Court. Thereupon, commissioners were appointed, by the consent of the parties, to whom the matters of the account were referred, with leave to except to their decision, and who made a report, which was excepted to in several particulars, which are sufficiently set forth in the opinion to be understood without their statement here.

The decree of the Chancellor upon the exceptions, and upon a question of law referred to him by the commissioners respecting the title to eight of the slaves in controversy, constitutes the subject matter for revision in this court.

F. S. BLOUNT, for the plaintiffs in error:

1. The charges of interest on the value of the property in exhibit No. 4, and on the hire of the negroes in exhibit No. 5, are erroneous, contrary to law, and should not have been so charged against defendants. The use of money of an estate, conceding that the property was money, must be proved and shown; where this is not done, no interest is proper, except upon final balance. Powell v. Powell, 10 Ala. 914; Lamb v. Lamb, 11 Pick. 371.

2. The amount of commissions allowed by the Chancellor, taking into consideration the value of the property, the nature of the litigation, and the expenses consequent upon it, scarcely defrays the travelling and other demands made upon the executor. His responsibility extending to the whole estate, compensation should be allowed commensurate therewith. Magee v. Cowperthwaite, 10 Ala. 966. The cases heretofore determined by this court, which have placed the allowance of compensation upon the ground of discretion in the court below, were cases where the facts were not sufficiently stated to enable this court to determine upon them. The record in this case, containing the report of the commissioners, discloses all the facts before the Chancellor upon which his decree founded. The statute of 1841, (Clay's Dig. 228 § 36,) establishes the just compensation to executors and administrators. The inquiry is to be directed "to the amount of labor performed, the responsibility involved, and the value of the estate." Gould v. Hayes, 19 Ala. 438; Craig v. Mc-Gee, 16 Ala. 48. Whether the property was kept together

by the direction of the testator, or keeping it together became a necessary act on the part of the executor for his own protection, after suit brought, it is submitted that the statute furnishes the true principle of compensation.

2. As to the eight slaves mentioned in the agreement of the parties, submitting the question of title in them to the Chancellor: The error of the Chancellor's argument in his decree consists in regarding the slaves as a vested remainder in Mrs. Bradley, on the death of her father, David Mitchell. The record and statement made by the commissioners distinctly shows that she does not take them by descent from the father, but by an agreement among the distributees, and "instead of property she would have been otherwise entitled to from the estate of her father." The distribution of Mitchell's estate was a void act, although the distributees, by whom it was made, were of lawful age. There was no provision made for the payment of debts. If valid as to those of lawful age, and laboring under no legal disability, neither Matthew Bradley or his wife were capable of assenting to it. He, by reason of mental inability, (see bill, issue and verdict on issue, pp. 27, 28,) and she by reason of her coverture.

In the case of Broome v. King, Adm'r, (10 Ala. 822,) cited by the Chancellor, Judge Goldthwaite says: "It is proper here to avoid misconception of the extent of the decision in the case of Pitts v. Curtis, (4 Ala.,) before cited, to state, it does not decide what the effect would be on the remainder, if the wife, instead of the husband, was the survivor." Admitting that this was a remainder vesting in the wife of Bradley on the death of her father, it is no authority for the decision of this cause, as relied on by the Chancellor. The facts, however, show that the principles of that case have no application to this.

Property acquired by marriage, which is an act of law, does not merge. Merger is not allowed to the prejudice of the rights of the wife. Cro. Jac. 275; 2 Coke (Thomas) top page, 654, notes H. I. K.; 3 Preston on Conveyances, 304-5; 4 Kent's Com. 100-1.

The case of Moye et al. v. ———, 2 Haywood's N. C. R. 186, is a case in all its facts most closely resembling the case at bar. The following is the decision: "Estates do not merge,

23

when they are not *ejusdem generis;* therefore, where A., a father, had a life estate in a negro, remainder to all his daughters, and he gives this slave to the husband of one of his daughters, there will be no merger of the life estate in the remainder, because that remainder is to all the daughters." Here the remainder descended to all the children of David Mitchell. See particularly Verdier v. Hyne, 4 Strobhart's Law Rep. 463. Upon this branch of the case, I refer to the court the following cases, showing the wife's right by survivorship to a remainder in slaves, accruing during coverture: Irwin v. Divine, 7 Monroe's Rep. 246; Wallace v. Taliaferro, 2 Call's Rep. 376; Upshaw v. Upshaw, 2 Hen. & Mun. 381; Pinkard v. Smith, Lit. Sel. Cases 336; Neale v. Haddock, 2 Hayd. Rep. 183; Hynes v. Lewis, Ex'r, Taylor's N. C. Rep. 33, 44, old ed.; Kornegay v. Canaway, 2 Dev. Eq. R. 405–6; Hardie v. Cotton, 1 Iredell's Eq. 61; Poindexter v. Blackburn, ib. 286; Whitehurst v. Harker, 2 ib. 292: McBride v. Choate, ib. 610; Rodgers v. Bumpass, 4 ib. 385; Revel v. Revel, 2 Dev. & Bat. 272; Weeks v. Weeks, 5 Iredell's Eq. Rep. 120.

If a *feme sole* be entitled to slaves in remainder or reversion, and marry before the termination of the particular estate, which does not terminate during the marriage, the right will go to the husband or the wife, as the one or the other may survive. 3 Lit. Ky. Rep. 281.

That such would seem to be the view that this court will take of this question, for the first time now presented, is to some extent indicated in the case of Strong et al. v. Gregory, 19 Ala. 146. The court say, "that the husband, during his wife's life, does not take such an interest in the remainder after the determination of the life estate, as is subject to levy and sale at law." See also Johnson v. Culbreath, 19 Ala. 348; Cuthbert v. Wolfe, 19 Ala. 374.

The estate of the wife, according to the agreement and division, was not to take effect until after the death of her husband, Matthew Bradley. It would therefore be absurd to say, that he could reduce into his possession an estate of his wife, which could by no possibility exist until after his death. The possession of the precedent life estate would not be a reduction constructively, because the estates were not co-existent;

and the remainder, (if it could be called one,) could not arise until the death of the tenant for life. Clancy on Rights 109, *et seq.* See also the elaborate opinion of Chancellor Kent in Schuyler v. Hoyle, 5 Johns. Ch. Rep. 196.

In the case of Purdew v. Jackson, reported in the first vol. of Russel's Eng. Ch. Rep. p. 1, the Master of the Rolls has pronounced a most elaborate and learned opinion on the rights of the husband in the personal estate of the wife, in which he reviews all the cases. He required the case to be twice argued, and after delivering his second decree, expressed himself as follows: " After this repeated consideration of the subject, I still continue of opinion, that all assignments made by the husband of the wife's outstanding personal chattel, which is not, or cannot then be reduced into possession, whether the assignment be in bankruptcy, or under the insolvent acts, or to trustees for payment of debts, or to a purchaser for a valuable consideration, pass only the interest which the husband has, subject to the wife's legal right by survivorship." See pp. 69, 70.

In the case of Honner v. Moreton, 3 Russell 65, the Lord Chancellor, in giving his judgment, uses the following language : " After considering the question in all its bearings, and the authorities and principles on the one side and on the other, these are the reasons which lead me to the conclusion, that the judgment of the Master of the Rolls in Purdew v. Jackson was right, and that the husband, dying while the wife's interest continued reversionary, has no power to make an assignment of property of this description, which shall be valid against the wife surviving."

The case of Purdew v. Jackson establishes the principle, that although the wife joined the husband in a deed to a purchaser, for a valuable consideration, for a moiety of a share of an ascertained fund, in which the wife has a vested interest in remainder expectant on the death of a tenant for life of that fund, and both the wife and tenant outlive the husband, the wife is entitled, by right of survivorship, to claim the whole of her share of the fund, against such particular assignee for a valuable consideration.

Now, it will be contended, that by Mrs. Whitworth's agreement to receive these slaves, they were converted into a pre-

sent interest, and thereby vested in the husband. The answer to this is, that the slaves were in the possession of her husband as tenant for life, and had always been from the death of his mother; that Mrs. Bradley, at the time of the division, was a *feme covert*, and could not bind her rights or conclude her equities by any agreement; that in law, the remainder in the slaves, if not devised by the will of David Mitchell, vested in all his children, at, and not until, the death of Matthew Bradley; that the executor of the will of David Mitchell could now sue for and recover the property, as belonging to Mitchell's estate; that Mrs. Whitworth is not concluded by the agreement entered into by her when *covert*, and can file a bill, when there is a representative of the estate, to carry into effect the trust of the will for her benefit. Blount v. Bestland, 5 Vesey's Rep. 515; McQueen on Husband and Wife, p. 44 *et seq.*

Neither Bradley, in his lifetime, nor any of the legatees under the will, could take legal steps to reduce their moieties of the estate of David Mitchell into possession, because there was no legal representative of the estate. The distributees or next of kin can maintain no suit, either at law or equity, for the mere purposes of distribution, until letters of administration have been granted on the estate of decedent; and until letters of administration have been granted, the legal title cannot be brought before the court, and therefore it cannot be bound by a decree. Gardner et al. v. Gantt, 19 Ala. 666; see also Johnson v. Culbreath, ib. 348; Bibb v. McKinley & Hopkins, 9 Porter.

Without regarding the existence of the will of David Mitchell in another view of the case, the record contains a copy of the will of Matthew Bradley, by which he devises his entire estate to his wife. The verdict of the jury sets aside his will, on the grounds alleged in the bill of defendants in error, viz: idiotcy and mental imbecility. It is a circumstance from which one of two things may be inferred: 1. That Matthew Bradley did not, during his lifetime, assert any claims to said slaves as husband of plaintiff in error. If he did, he either done some act, or made some declaration to that effect, which it was incumbent on the defendants in error to prove. His possession as tenant for life of the slaves, was not such an

appropriation as would bar his wife's right by survivorship. The possession must be evidenced by some act showing that he claimed as husband. Blount v. Bestland, 5 Vesey 515; Wallace v. Taliaferro, 2 Call; Andrews & Brother v. Jones, 10 Ala. 442. 2. If he was of unsound mind at the date of his will, which was before the death of David Mitchell, and of course before the division, he could neither assent to, nor dissent from, the agreement of the distributees, and the possession of the property will be referred to his life estate. 3. Being in the possession of the property, (conceding his mental sanity,) and knowing of the existence of the will of David Mitchell, giving a specific legacy to his wife other than the slaves in controversy, it may be reasonably inferred that he would not interfere with her rights. Between husband and wife his possession of a chose in action belonging to the wife may be qualified by his intention, and the ownership follows his will; and the law is the same even against creditors. See Andrews & Brother v. Jones, 10 Ala. 442, *et seq.*, where several cases on this point are stated.

The issue presented to the jury the question of mental soundness at the time of the execution of the will. While it may be conceded, that the executor is responsible for all acts done as such prior to the verdict, (Shearman v. Christian, 6 Randolph 56,) setting it aside, and that they are valid; yet it is submitted to the court, that he was no longer executor after the verdict. Before a final decree in the cause could be made, it was necessary that an administrator should be appointed, there being no representative of the estate of Matthew Bradley before the court. 2 Lomax on Ex. 504 §§ 1, 18; Gardner v. Gantt, 19 Ala. 666.

The case under the agreement having been submitted to the commissioners for a final settlement of the controversy between the parties, it was error in the Chancellor to render a decree without referring the disputed questions of fact back to the commissioners, with directions to ascertain the facts by testimony and decide accordingly.

It is submitted whether he had any such jurisdiction of the cause under the agreement, as authorized him to render the decree?

WATTS, JUDGE & JACKSON, *contra:*

1. As to the interest on the hire of the slaves charged by the court. It will be observed, that there is no objection to the charge of hire ; it is agreed that the hire was properly charged. Shall interest be allowed on that hire? There can be no doubt, under our decisions at least, that whenever the principal is ascertained to be due, interest follows as an incident. Godwin et al. v. McGehee et al., 19 Ala., and authorities there cited. It is equally clear, that the interest on the value of the property consumed by Mrs. Whitworth and Mitchell, belonging to the estate of Matthew Bradley, was correct. The plaintiffs in error do not complain that the value itself was charged, but object only to the interest. They consent and agree that the charge of the principal was right, and make no objection to the report of the commissioners as to this. (See the decree of the Chancellor and report of the commissioners as to this point.) The authorities above cited show that interest follows as an incident to the principal.

2. As to the allowance of commissions to A. B. Mitchell. This matter is left to the discretion of the Chancellor. Mc-Gee v. Cowperthwaite, 10 Ala. Rep. 966; Phillips' Adm'r v. Thompson, 9 P. 664. The cases cited by the plaintiffs' counsel do not apply. It will be perceived that in these cases, (Gould v. Hayes, 19 Ala., &c.,) the executor or administrator was permitted by the decree of the court or will to keep the property of the estate together, and there is a distinct statute regulating the compensation of executors or administrators in such cases; and this statute is referred to in Gould v. Hayes, *supra.* In this case, however, the executor was at no great expense. See his answer, in which he shows he had little or nothing to do with the property, and was at no expense, except what arose from the probate of the will, save what he brought on himself in defence of the suit growing out of the contest about the will; and as to these costs and expenses, by agreement of the parties ·they were all to be paid out of the estate, and were so allowed by the commissioners and the Chancellor. (See the Chancellor's decree.)

3. As to the eight negroes. The husband, by virtue of the marriage, becomes entitled, *eo instanti,* to all the wife's personal property, in her possession at the time of the marriage,

or which may accrue to her and come to her possession during the coverture. Clancy on Husband and Wife; McGehee v. Toland, 8 P., and authorities there cited. It is not necessary that the wife have the actual possession and enjoyment during coverture. Her possession may be constructive. McGehee v. Toland, *supra;* Pitts v. Curtis, 4 Ala.; King v. Broom, 10 Ala.; 1 Hill Ch. on p. 404. The husband's rights vest absolutely in such property, and do not depend upon his surviving his wife. (See authorities *supra.*) Whether he survives her or not, at his death all such property goes to his representatives, subject to distribution as the balance of his estate.

The husband is entitled to his wife's choses in action at the time of the marriage, or to such as accrue during the coverture; provided he reduces them into his possession during the coverture. By the statute of 29, Charles 2, chap. 3, the husband in England became entitled to the wife's choses in action not reduced to his actual possession during the coverture, as her administrator, when he survived her. In some of the States of the Union a similar statute has been enacted, and hence the decisions in those states conform to the English decisions. In some other of the United States it has been held, that the statute of 29, Charles 2, was merely declaratory of the common law, and hence they hold the same doctrine in the absence of the statute; and again, some of the states have held the same doctrine strictly upon common law principles, as they understood them, referring to decisions which were either based upon the statute of 29, Charles 2, or upon some statute of a particular state. In Alabama, we have no such statute, and our courts have uniformly held, that the husband is not entitled to the wife's choses in action by virtue of the marriage, unless he reduces them to possession during the coverture; and it makes no difference whether he survives her or not. Mayfield v. Clifton, 3 S.; Johnson v. Wren, 3 S.; Bibb v. McKinly et al., 9 P.

A vested interest in personal property to take effect *in futuro*, or a vested remainder in personal property, as it is frequently termed in courts of the United States, and amongst them our own courts, is not in any sense of the term a chose in action, unless it be held adversely to the remainderman.

See the definition of a chose in action given in McGehee v. Toland, *supra;* Pitts v. Curtis, 4 Ala.; King v. Broom, 10 Ala.

4. If a vested remainder in personal property accrue to the wife during coverture, or if she be entitled to such interest at the time of the marriage, it *eo instanti* vests in the husband as his absolute property. See authorities last cited, *supra;* Burgess v. Heape, 1 Hill Ch. 404. And it is not necessary that the husband should reduce the same to actual possession during the coverture. The possession of the tenant for life is the possession of the remainderman. If, therefore, the wife be entitled to the interest in remainder, she is in possession of the property; her possession being that of her husband, his marital rights immediately attach.

5. In some of the cases cited by the counsel for the plaintiff in error, it is said that the husband's right to the remainder of the wife in personal property depends upon whether he survives her. These cases cited from North Carolina Reports, we submit, are influenced by a statute of North Carolina regarding negro property as real estate, and governed by the same rules as to descent and distribution as land. Marksbury v. Banks, 3 Littell, decides the principle for which we contend; but by way of *dictum*, intimates that if the wife survived, she would have been entitled to the remainder. In the case in 5 Littell's Rep. this doctrine is doubted. The case of Upshaw v. Upshaw, 2 Hen. & M. Va., does hold the doctrine for which the counsel contends. It is believed that the same statute which is in North Carolina existed there. The decisions cited from the English Reports are really in reference to contingent remainders and reversions, and of course can have no influence on the case at bar. But we submit that the decisions in the United States which have held, that the right of the husband to the wife's remainder in personal property depends upon the question of survivorship, when not influenced by some statute of the particular state, are based upon a misconception of the nature of a vested interest to take effect *in futuro* in personal property. They seem to have regarded such interest as a chose in action, and when they have arrived at this conclusion, have applied the rule established in England by the 29 Charles 2, or the statutes of

some of our states, or have regarded the 29 Charles 2 as merely declaratory of the common law. But in Alabama, we have not regarded a vested remainder in personal property as a chose in action, (see Pitts v. Curtis, *supra*, and King v. Broom, *supra*,) unless such vested interest was converted into a chose in action by some act of the tenant for life, such as a sale, &c.; or unless from some other cause the property, in which is the remainder, was held adversely by another. Our court has held such vested remainder to be a vested interest, as in possession of the remainderman; and these adjudications are well supported by authority, and upon principle are impregnable.

6. The facts of this case show that David Mitchell owned a vested remainder in the negroes in controversy. Upon his death, his heirs being all of age, agreed to divide, and did divide all his property among themselves, including in such division the negroes in dispute as a part of his property. Mrs. Whitworth, then Mrs. Bradley, agreed to receive, and did receive her father's interest in these slaves, as a part of her share in his estate, instead of other property, to which she would have otherwise been entitled in his estate. Upon such division, (which was eighteen months before the death of her husband,) the other six heirs of David Mitchell conveyed and relinquished to her all their right in and to these slaves. She, by virtue of this division, (which is certainly a valid one, and wholly unlike the one in the case of Culbreath v. Johnson, in 19 Ala. Rep.,) became invested with whatever interest her father had in these slaves, viz: a vested remainder. The title to this vested remainder was thus, *eo instanti*, vested in her, and the property not being held adversely, she was immediately, in law as well as in fact, invested with the possession; and she being in possession, her husband was, by virtue of the marriage, also in possession, and therefore his marital rights attached absolutely. For whatever comes to the possession of the wife during coverture, belongs to the husband.

7. She admits, in her answer, that this property was received from her father's estate by her husband in his lifetime, (see answer, pp. 14–5 of record,) and the statement of facts reported by the commissioners shows, that the division was made by consent of all the heirs of David Mitchell. This

language could not be used unless Matthew Bradley had been present, giving his assent; or, if not present, assenting in some other way. No one seeks to set aside this division. It was made by parties of full age and legal capacity. The fact that the daughters of David Mitchell were under coverture, cannot for a moment be held as an obstacle to the division. The husband had the right, without the assent of the wife, to make the division. The most the wife could have done would have been, to prevent the husband's rights from attaching, by asking a court of equity, before the division, to settle the same upon her to her separate use.

8. The wife here does not, in her answer, urge anything against the validity of the division; does not claim the property as her own; asserts no title to it; but on the contrary, admits her husband's right to it, and even before the Chancery Court, and now does not seek to set aside the division, but has always and now affirms it as a valid one.

9. The presumption at law is, that the husband was capable of making the division; that he was of sound mind. The wife asserts and swears in her answer, that he was of sound mind, and the verdict of the jury does not show, that he was of unsound mind at the time he made the will, or at the time of the division of David Mitchell's property. The verdicts of the jury merely say that it was no will, giving no ground upon which the verdicts were based. The writing purporting to be his will was attacked on various grounds. The verdicts of the jury cannot, therefore, overturn the strong presumption of law and the sworn answer of plaintiffs in error as to his soundness of intellect, and the positive sworn assertion of the wife in her answer, that he received the property during his lifetime.

10. As to the proper construction of the statement of facts. The proper construction is, that the words, " to be her property at the death of her husband," and " to take effect at the death of the said Matthew Bradley," is that they describe the nature of the interest which she received, viz: that it was a remainder to take effect at Bradley's death. And these words do not convey the idea that the title to this interest was not to vest until the death of Matthew Bradley. This construction will be apparent, when we consider the nature of the in-

terest to be divided, and the other facts of the statement of facts, together with these words. What interest was it these seven heirs were then dividing? An interest which David Mitchell had in the slaves Bill, Binah and their increase. What was that interest? A vested remainder, to take effect at the death of Matthew Bradley. When did David Mitchell's interest vest? If it was a vested remainder, it vested at the death of Margaret Bradley, but to take effect at the death of Matthew Bradley, her son. David Mitchell's title, then, vested long before his death. If David Mitchell's interest was not a vested one, then the whole title was in Matthew Bradley, and David Mitchell's estate had no interest whatever in these slaves. But we concede that David Mitchell's estate was, under the will of Margaret Bradley, clearly entitled to a vested remainder in these slaves, to take effect at the death of Matthew Bradley, the tenant for life. Now, by the agreement between the heirs of David Mitchell, whatever interest in these slaves David Mitchell owned was transferred to Mrs. Bradley, the wife of Matthew. She stood in the shoes of her father as to this. When did her interest vest? The statement of facts shows that the other heirs relinquished to Mrs. B. at the time of the division all the title they had to these eight slaves. The title, therefore, by virtue of this division and relinquishment, passed out of the estate at the time of the division. Where did the title go? It certainly vested immediately in Mrs. Bradley; it was not in suspense until the death of Matthew Bradley. Such an idea could not be tolerated in the mind of any lawyer. It follows, necessarily, that the title was vested in her at the time of the division, to take effect at the death of Matthew Bradley, her husband. The title being in her, was, *eo instanti*, vested in her husband. To make this more clear, suppose the life estate had been in some other person than her husband, and she during the coverture should be invested with the title, to take effect at the death of that other person, could it be doubted that the title, thus vested in her, would immediately vest in her husband? Can his rights be less than they would have been, because he is the tenant for life, rather than some third person?

11. By the agreement of counsel found in the record, page 56, only three points are to be decided, viz: 1st. As to inter-

est; 2d. Commissions to executors of Mitchell; 3d. Title to these eight negroes.

12. The report of the commissioners must be regarded as the report of a register; for, by agreement of the parties, they are substituted in the place and stead of the register, with powers somewhat enlarged by mutual consent; and they were required to report to the court. Their report was read, and there were no exceptions to it, except such as are considered by the Chancellor. The parties now are confined to the exceptions made to that report before the Chancellor. All other objections are waived. They cannot now be permitted to say that the commissioners ought to have decided the question of title to these slaves. The commissioners reported this matter of title back to the Chancellor for his decision, and to this action of the commissioners the plaintiff in error did not except before the Chancellor, and it is clear that they cannot now for the first time do so.

13. The decision of the Chancellor was, by consent, made on the facts reported by the commissioners.

14. There was no necessity for the appointment of an administrator of the estate of Matthew Bradley, after the will was set aside.

CHILTON, C. J.—The Chancellor decided, that the negro boy, Bill, and the woman, Binah, and her six children were the property of the estate of Matthew Bradley, and did not belong to his widow, Margaret. It is insisted by the counsel for the plaintiffs in error, that this was erroneous. In order to arrive at a correct understanding of the nature of the title, we state the facts in relation to them.

Margaret Bradley died in 1826, and by her will bequeathed these slaves to Matthew Bradley for life, and at his death to David Mitchell, who is the father of Mrs. Whitworth, and who died in 1840, Matthew Bradley surviving him. David Mitchell made a will; but his children, all being of full age, agreed to dispense with the will, and to divide his property among them. There were seven children, Mrs. Whitworth, who was then the wife of Matthew Bradley, being one of them; and upon the division, she consented and agreed with the other children to take, as a part of her share of her fa-

ther's estate, the remainder which belonged to her father in these slaves, to vest in her upon the death of her husband, Matthew Bradley, who then had them in possession, as owner for life under the will of Margaret Bradley.   Upon the death of Matthew, the husband, Margaret, the widow, held possession of these slaves, and claims that her title to them attached in possession.   On the other hand, it is contended, that her purchase of the remainder enured to the benefit of her husband, whose life estate became merged in the larger estate in remainder, thereby vesting in him the absolute property.

1. Before proceeding to discuss this question, it is proper to notice an objection raised by the counsel for the defendants, that the answer of Mrs. Whitworth concedes that these slaves belonged to her husband.   Her answer sets up the will of Matthew Bradley, which gave her all his property ; but in speaking of these slavei, she says, that there were included in the forty-five slaves left by Matthew, eight which were respondent's share of her father's estate, and were received by the said Matthew before his death, leaving the number to which he was entitled, in his own right, at the time of his death, thirty-seven.   Pending the litigation, the parties agree upon the facts corresponding with those above stated, which, by their mutual consent, are submitted for the decision of the court.   Now, we do not think we should refuse to consider these facts, upon the ground that the pleadings do not put them in issue, as it is reasonable to presun.e, that, but for the agreement, the pleadings would have been amended.   Besides, no objection of the kind was taken in the court below; but the Chancellor, under the agreement, proceeded to determine what the law was arising upon these facts.   To refuse to revise his decision, which the parties have mutually invoked upon the facts submitted, on the ground of the want of a formal issue appropriate to them, would be to take the parties upon surprise, and to allow the defendants in error to claim the benefit of a decision which could not be revised, cutting the other party off from the benefit of an amendment which, had the objection been made in the court below, it was competent for the Chancellor, in the exercise of a sound discretion, to have allowed.

2. Coming, then, to the main question : Under the facts

stated, are the eight slaves, Bill, Binah and their increase, the property of the estate of Matthew Bradley, or do they belong to Mrs. Whitworth? It is clear, that David Mitchell had a vested remainder in them; that is, the right to the remainder was absolute in him, but the right to the possession and enjoyment of the use of the slaves was postponed until after the termination of the life interest of Matthew Bradley. Wilkes v. Grear, 14 Ala. Rep. 437, and cases cited on p. 443.

What effect had the agreement entered into between Mrs. Bradley, now Mrs. Whitworth, and the other distributees of David Mitchell, by which she was to have the remainder in these slaves, to take effect after the death of her husband? There is no proof whatever, save such as the arrangement itself may import, that the husband ever consented to it. Can we imply his assent? Has he done any thing, or said any thing, which would have prevented him, had he continued to live, from insisting upon a division of the estate of David Mitchell, disregarding the arrangement made by his wife? So far as the facts are set forth in this record, he certainly has not. As to the possession of the slaves, *that* he had in his own right, and derived them from his mother, Margaret Bradley, whose will conferred them upon him; and the whole record is silent as to his assertion of any other or further claim to them, or of any ratification of the agreement of the wife, or that he even knew that such agreement had been made. We cannot infer such assent from the supposition that the arrangement was beneficial to him. Even conceding that it would have vested in him the whole interest, it does not appear but that the interest in her father's estate relinquished by the wife, and in lieu of which she accepted this remainder, was more valuable than the remainder.

With a view to the safety of the husband, the law disables the wife from entering into personal contracts so as to bind him, without his express or implied assent. Gilbert's Law of Ev. 183; Smith v. Sheriff of Middlesex, 15 East R. 607; 1 Bright on Husband and Wife, 5. So also, the wife cannot receive or dispose of money without his concurrence. Thus, where a legacy, bequeathed to her generally, and not given to her separate use, was paid to her, instead of the husband, the payment was held void as to the husband,—Norris v. He-

minway, 1 Hagg. Eccl. Rep. 5; Moses v.Le vi, 3 Younge & Coll. 359; Palmer v. Trevor, 1 Ver. 261; 1 Bright H. & W. 40; and in Tracy v. Dutton, 2 Wils. 3, the same doctrine was held to apply to the payment of rent. If the husband authorize the wife to act as his agent, or she is accustomed so to act by his permission, in which event his authority as to the particular act may be implied, then he would be bound by it. But it has been held, that the presumption of the husband's authority will not be raised by the fact that the money received by the wife has been applied in payment of the husband's debts. See Goldstone v. Tovey, 6 Bing N. C. 99; 1 Bright H. & W. 42.

From these authorities, and others which we have examined, but which we need not cite, it is clear, that no court could infer the husband's authority in the case before us; for there is not only a total want of all evidence of express authority delegated to the wife, but it does not appear that she was accustomed to deal for the husband, so as to imply his assent. Besides all this, it appears by the verdict of a jury in this case, upon the issue *devisavit vel non*, that, at a period not remote from that of which we are speaking, the husband was incapable of transacting his business by reason of mental derangement or unsoundness. Be this, however, as it may, we cannot imply his assent. It follows, therefore, that the husband was not in any wise bound by this agreement on the part of his wife, but might, at any time before his death, have instituted proceedings to have recovered his wife's share in her father's estate, irrespective of her agreement. As he was not bound at the time of his death by said arrangement, it results that the children of David Mitchell were not bound, as the contract or agreement must be mutually obligatory and bind both parties, or it binds neither.

But it is said that the distributees of D. Mitchell now consent to be bound by the agreement; at least, that they raise no objection to it, and this consent should operate to render it valid. However this may be, as between the distributees themselves, it is very clear that it does not in any wise affect the nature of the husband's title; and we have to deal with that as it existed at the time of his death. We have shown, we think, that he had no interest in the remainder by virtue

of the wife's contract, she being incapable of contracting; and as there had been no administration upon the interest which David Mitchell had in the slaves, and no consent of the executor of said Mitchell, which could be invoked in aid of the husband's title to his wife's share or interest in the remainder, this interest remained to the wife, and the administrator of the husband has no legal claim to it.

This view renders it unnecessary to consider the question, as to whether, conceding the wife's purchase of the remainder valid, the husband's life interest became merged in the larger estate thus acquired by the wife, so as to vest in him the absolute property; or, whether the remainder, to take effect on the death of the husband, survived to the wife after the husband's decease. These are questions about which there is some conflict in the cases; and we prefer postponing their decision until some case shall arise necessarily requiring it.

Upon the other questions involved in the record, namely, the allowance of interest against the widow, on the yearly value of that portion of the personal estate to which she was not entitled, and the compensation allowed the executor, A. B. Mitchell, we agree with the Chancellor. There was no objection made to charging Mrs. Whitworth with the hire, but to the interest on it merely. The interest is but a just compensation for withholding the principal sum; and when the principal sum is ascertained to be due at a particular period, and remains unpaid, without a sufficient excuse for its non-payment, the interest follows as an incident. See Godwin et al. v. McGehee, 19 Ala. 468; 7 Por. 110; 7 Ala. 218.

The services rendered by the executor are not such as to show that the compensation allowed by the Chancellor is at all inadequate, and no rule of law has been violated in the allowance. Admeasured by the nature of the services and their extent, as shown by the proof, we should not disturb the allowance, unless obviously unjust or inadequate. We see nothing in the proof before us showing that such is the case in the compensation here allowed.

The decree, except as to the eight slaves and their hire, is affirmed; but as to these, it must be reversed, and the cause remanded.