[Lewis v. Lee County.]

# Lewis *v.* Lee County.

*Action against County Treasurer and the Sureties on his Official Bond.*

1. *Admissions by principal; when not competent evidence against surety.* Admissions or declarations of the principal, not made in the course of any business, or as parts of any acts with which the surety is connected by his contract, but merely narrative of a past transaction, are hearsay, and not competent evidence against the surety, whether he is sued alone, or jointly with the principal.

2. *Admissibility of evidence.*—Where, in an action on the official bond of a county treasurer, the breaches assigned are his failure to account for money received in his official capacity, and to pay it over to his successor, evidence as to what use he made of the moneys collected, the place at which it was kept, his failure to keep it safely, and as to his having it on hand at the expiration of his official term, is irrelevant and inadmissible.

3. *Liability of county treasurer for State certificates received by him, and appropriated to his own use.*—Certificates issued by the Governor under authority of the act approved February 19th, 1867 (Pamph. Acts, 1866-7, p. 657), and obligations issued in pursuance of the act approved December, 19th, 1873 (Pamph. Acts, 1873, p. 40), having been received by a county treasurer in his official capacity, and by him converted to his own use, he and his sureties can not absolve themselves from liability therefor, when sued on his official bond, by contesting the constitutionality of the statutes under which they were issued.

4. *Liability of county treasurer for interest.*—While it is the duty of a county treasurer, on the termination of his official term, to pay over to his successor the public moneys he has received and not disbursed according to law, and all moneys which he has neglected to collect, and for the wrongful detention thereof the law gives interest in the nature of damages, yet, interest will not begin to run thereon until his successor has qualified, as, until that time, there can be no lawful payment.

5. *Report of committee appointed by court of county commissioners on treasurer's books res inter alios acta.*—The report of a committee, appointed by the court of county commissioners to audit and examine the books and papers of the county treasurer, made to that body after the termination of his term of office, showing that the treasurer was in default for a stated sum, is, as to the treasurer and his sureties, *res inter alios acta,* and inadmissible against them in a suit brought by the county against them on the treasurer's official bond.

6. *Same; when evidence against the treasurer.*—If, however, the report was read to the court in the hearing of the treasurer, and he assented to it in part, so far as he assented to it, the report is competent evidence against him ; but such assent, being an individual, and not official act, does not render the report competent evidence against his sureties.

APPEAL from Lee Circuit Court.

Tried before Hon. H. D. CLAYTON.

This action was brought by Lee county against John F.

Lewis, a former treasurer of said county, and others, the sureties on his official bond; was founded on said bond, and was commenced on 6th September, 1875. The complaint as amended assigns several breaches of the bond, the gravamen of all which is, that the said Lewis, while county treasurer, collected divers sums of money belonging to the county, which he failed to legally and properly account for, or to pay over to his successor in office. The defendants filed several pleas, putting in issue the assignments of breaches of the bond contained in the complaint, and upon issues joined on these pleas the cause was tried, the trial resulting in a verdict and judgment against the defendants, from which they sued out this appeal.

On the trial Wilson Williams was examined on behalf of the plaintiff, and testified, in substance, that he was judge of probate of said county from 1874 to 1880, he having gone into office about the same time that the successor of Lewis as county treasurer did; that soon thereafter, and after such successor had been elected and qualified, a committee was appointed by the court of county commissioners of said county to examine the books, vouchers, etc., of said Lewis; and that afterwards said committee made a written report to said court of county commissioners touching the matters for which they had been appointed, in which they state an account against said Lewis as county treasurer, containing numerous items of debits and credits, and showing a considerable balance due from him to the county. This report is set out at length in the bill of exceptions. The witness further testified that said report was read to the court of county commissioners by said committee in the hearing of Lewis, and that he then and there, in effect, admitted the correctness thereof, with the exception of one item mentioned by the witness. To the testimony as to the admission made by Lewis, his co-defendants, the sureties on said bond, objected as illegal, incompetent and irrelevant evidence against them, and moved the court to instruct the jury that said admission was only admissible against Lewis; but the court overruled their objection and motion, and they duly excepted. The plaintiff then offered in evidence the report made by said committee, to which the defendants objected on the same grounds as stated in support of their objection to said admission; but the court overruled their objection, and allowed the report to be read to the jury, and the defendants duly excepted. The defendants then moved the court to limit the effect of the report as evidence by instructing the jury that it was not proper or competent evidence as against them, and that they could only look to it as evidence against Lewis; but the court overruled the motion, and the defendants excepted. Other admissions made by Lewis as to his indebtedness to the county after

[Lewis v. Lee County.]

the report of said committee had been made, were introduced in evidence against the objection of said sureties, and exceptions reserved by them in reference thereto, which need not be set out at length.

The defendant Lewis was examined as a witness on behalf of himself and his co-defendants, and was asked the following questions: (1) "Did you ever use any of the county's money;" (2) "Where did you keep the county's money while in office;" and (3) "Did you have any of the county's money on hand at the expiration of your term of office." To each of these questions the plaintiff objected, the objections were sustained, and the defendants excepted.

There was also evidence tending to show that a large amount of the money collected by Lewis, and charged against him as treasurer, and for which his receipts and admissions had been introduced in evidence by the plaintiff, were certificates issued by the State under the statutes mentioned in the opinion, and commonly known as "Patton money," and "Horseshoe money."

The court charged the jury, *ex mero motu*, among other things, as follows: (1) "That the report of the committee, made to the court of county commissioners, was of itself evidence, to which the jury could look as against each and all of the defendants." (2) "That all the admissions made by Lewis, in evidence, were binding as against all the defendants, unless said admissions were made after said Lewis had made a final settlement with his successor in office." (3) "That defendants were chargeable with the full face value of all the State certificates, both of the so-called "Patton money," and the so-called "Horseshoe money," received by Lewis while county treasurer, with interest thereon." The defendants excepted to these charges, and also to the refusal of the court to charge the jury, at their written request, as follows: "That no interest can be charged against Lewis before such time as his successor was qualified, as shown by the proof; and that if there be no such proof, no interest can be recovered." They also excepted to the refusal of the court to give several charges requested by them, based on the theory that the defendants were not liable for the State certificates received by Lewis. Lewis' sureties and co-defendants asked the court in writing to give to the jury the following charges: (1) "That no admissions made by the defendant Lewis after the termination of his office as treasurer, and not during the transaction of any business for which his sureties were bound, can bind his co-defendants in this suit" (2) "That in an action on a county treasurer's bond against the principal and his sureties, confessions made by such principal after his successor was elected and qualified, and after he had ceased to perform the duties of said office, are not binding

[Lewis v. Lee County.]

on his sureties." The court refused to give these charges, and said defendants excepted.

The several rulings above noted are here assigned as error.

GEO. P. HARRISON, jr., and GEO. W. HOOPER, for appellants. (1)· The admissions made by Lewis were not competent evidence against his sureties.—1 Greenl. on Ev., § 187; Brandt on Suretyship, § 521; *Stetson v. City Bank of New Orleans*, 2 Ohio St. 175. (2) The report made by the committee appointed by the court of county commissioners was not competent evidence against the defendants. The appointment of the committee was not authorized by law, and their report was merely à calculation of three men, based upon an examination of certain books and papers. These books and papers were the best evidence, and should have been introduced in· evidence. (3) There was no proof that the successor of Lewis had ever qualified. If there was no qualified successor, there was no one authorized by law to receive the funds from Lewis; and he was, therefore, not chargeable with interest. (4) The questions propounded to Lewis were clearly pertinent to the issues joined, and should have been allowed. (5) The State certificates were bills of credit, and issued in violation of the Federal Constitution. See Pamph. Acts, 1866–7, p. 657; Pamph. Acts, 1873, p. 40; *Craig v. Missouri*, 4 Peters, p. 410; *Briscoe v. Bank of Kentucky*, 11 Peters, p. 258; Burroughs on Pub. Securities, p. 46, and authorities there cited. The circuit court, therefore, erred in holding that the defendants were chargeable with the certificates received by Lewis.

W. H. BARNES & SON, *contra*. (1) When the principal and surety are sued in a joint action, the admissions of the principal are good against the surety also.—Brandt on Suretyship and Guaranty, p. 635, and authorities cited in note; Bayliss on Suretyship and Guaranty, p. 399; *Atlas Bank v. Brownville*, 9 R. I. 172; *Amherst v. Root*, 2 Metc. 522. (2) While we do not admit that the State certificates were bills of credit, and the acts under which they were issued, were for that reason unconstitutional, we insist that the treasurer can not raise that question.

BRICKELL, C. J.—There are cases which go so far as to maintain that the declarations or admissions of the principal, without restriction as to the time or circumstances under which they were made, are evidence against the surety.—3 Phill. on Ev. (C. & H. notes), 261. There are other cases affirming the proposition pressed in the argument of the counsel for the appellee, that when principal and surety are jointly

[Lewis v. Lee County.]

sued on a joint or a joint and several obligation, any admission or declaration made by the principal, which is competent evidence against him, is also competent against the surety; for the reason, it is said, that as the suit is against several joint contractors or joint obligors, a recovery to the same extent must be had against all or none, unless one or more of the defendants interposes a personal defense, such as infancy, coverture, or bankruptcy.—*Pendleton v. Bank of Kentucky,* 1 T. B. Monroe (Ky.), 171; *Amherst Bank v. Root,* 2 Metc. 541; *Atlas Bank v. Brownville,* 9 Rhode Island, 168. Without any limitation as to the nature of the action, approved text writers state that the mere naked admissions of the principal, not made in the course of any business, or as parts of any acts with which the surety is connected by his contract, can not be received as evidence to charge the surety.—1 Greenl. on Ev. § 187; 2 Whart. on Ev. § 1212. This is the rule which has been recognized in this court as to the admissions or declarations of the principal, or his acts not in the transaction of business for which the surety is bound.—*Bondurant v. Bank,* 7 Ala. 830; *Dumas v. Patterson,* 9 Ala. 484. In the first of these cases the declarations of a sheriff in reference to the time at which an execution in his hands was to be paid, accompanied with evidence of the payment, were received to charge his sureties who were separately sued; the court holding that the declarations, having been made while the sheriff was acting officially, though not simultaneous, were parts of the *res gestæ,* the payment of the money. In the other case, the admissions of a sheriff that he had collected money on an execution, not made while acting officially, merely narrative of a past act, were held inadmissible against his sureties, when sued jointly with him. In *Townsend v. Everett,* 4 Ala. 607, the annual settlements of a county treasurer with the court of county commissioners, and the statement made by him to his successor in office of the amount of moneys remaining in his hands, were held competent evidence against his sureties. These were acts which he was bound by law to perform—they were official duties specially imposed upon him; and fidelity in the performance of official duties the surety guaranteed. The court said: "It may be conceded that the acts or declarations of a principal which will be evidence against the surety, must be made or done in the performance of the duty for which the surety is responsible; but the concession will not avail the surety in this case, as that is literally the fact here." These cases illustrate the rule as it has been settled in this State. The main inquiry is, as is said by Mr. Greenleaf, whether the declarations or admissions of the principal were made during the transaction of the business for which the surety was bound; if so, they are admissible

against the surety. If otherwise; if not concomitant with any act for which the surety is bound; if they are mere narrations or admissions of past transactions, they are mere *hearsay*, and not competent evidence against the surety, whether he is sued severally or jointly with the principal. The reason is well stated: "The surety is considered as bound only for the actual conduct of the party, and not for whatever he might say he had done; and, therefore, is entitled to proof of his conduct by original evidence, where it can be had, excluding all declarations of the principal, made subsequent to the act to which they relate, and out of the course of his official duty." 1 Greenl. on Ev. § 187.

In the case before us, we lay no particular stress upon the fact, that prior to the making of the declarations or admissions of Lewis, his term of office as county treasurer had expired. There remained the duty of stating his official account, and of delivering to his successor all the money, books, papers and property of the county, which had come to his possession, and his declarations or admissions accompanying either of these acts, and explanatory of them, would be competent original evidence against his sureties, though his official term had expired. The point of objection to the competency of the evidence of his declarations, as against his sureties, is, not that they were made after his term of office had expired, but that they were not made while he was doing any act, transacting any business, or performing any duty for which the surety was bound. They were subsequent in point of time to all official acts or duties to which they refer, and are simple admissions that in his official capacity he had received moneys of the county. As against himself they were competent original evidence.—*Lewis v. Lee County*, 66 Ala. 480. As to his sureties, they were mere hearsay, creating no inference or presumption of liability for which they were bound to answer. The circuit court erred in refusing the instructions requested, limiting to the principal the operation and effect of these admissions.

The relevancy of the evidence sought to be elicited by the several questions propounded to Lewis, while under examination as a witness, is not perceived. It is not the use of the money of the county, or the failure to keep it safely, or the place at which he kept it, or the having it on hand at the expiration of the official term, which are relied on as breaches of the official bond, but the failure to account for it legally and properly, or to pay it over to his successor.

Whether the certificates or receipts, issued by the Governor under the authority of the act approved February 19, 1867, (Pamph. Acts, 1866-7, p. 657), or the obligations issued in pursuance of the act approved December 19, 1873, (Pamph.

[Lewis v. Lee County.]

Acts, 1873, p. 40), were bills of credit, falling within the inhibition of the Federal Constitution, or simple instruments binding the State to the payment of money at a future day in satisfaction of debts it had incurred, operating rather than otherwise a mere change in the form, or in the evidence of such debts, or to be employed in borrowing money for public uses, can not in this case become a practical question. If they were bills of credit, having been by the State introduced into the circulating medium, the community having given them currency upon the pledge, that they should be received in payment of all public dues, and should be redeemed, a moral obligation rested upon the State to receive and to redeem them. The obligation could, not be discharged without the agency of the officials employed in the collection and safe keeping of the public revenue. When these officials received them under the authority of law, from all liability they could absolve themselves by accounting for them *in specie.* They can not absolve themselves by a controversy with the State as to the legality of the issue, after to their own uses they have converted them. Cooley on Taxation, 500.

The duty of Lewis, the principal, on the termination of his official term, was to pay to his successor in office the public moneys he had received and had not disbursed according to law, and all such moneys as he had neglected to collect. These formed a specific sum, to which the county was then justly entitled. The detention of it was wrongful, and for the detention the law gives interest in the nature of damages.—*Cheshire v. Howland,* 13 Gray, 324. In this State, interest according to the statutory rate is regarded as but just compensation for withholding the principal; and when the principal is ascertained to be due at a particular time, and without sufficient excuse remains unpaid, interest follows as an incident.— *Whitworth v. Hart,* 22 Ala. 343. Until there was a successor to Lewis, qualified, and authorized to receive the moneys of the county, there could be no payment of them, and interest would not accrue. Whatever of indefiniteness there may be in the evidence upon this point, as it is stated in the bill of exceptions, can hereafter be obviated.

The committee examining the books and papers of Lewis, as county treasurer, were not appointed in pursuance of the statute.—Code of 1876, § 849. They were appointed by the court of county commissioners, not by the judge of probate. The purpose of their appointment was doubtless to obtain for the court information as to the condition of the finances of the county. When the report was received by the court, they could have made it the basis of whatever action may have been deemed expedient for the public interests. But it could not

[Jackson, Morris & Co. v. Rutherford.]

become matter of evidence against any official, who did not assent to the truth of its statements. As to all others it is *res inter alios acta*. The same would be true of a report of a committee appointed in pursuance of the statute by the judge of probate, to examine the books and vouchers of the county treasurer. Their office is performed, when they make the examination and report to the judge. The report is a mere medium through which information may be derived as to the condition of the office of the treasurer, and of the finances of the county, dependent for its value upon the integrity, skill, industry, and accuracy of the committee. But with it the treasurer is not connected, has not the opportunity of verifying, or of controverting its statements, unless he enter into a controversy, more or less unseemly, with the committee, which there is no arbiter to determine. So far as Lewis assented to the statements of the report, as against himself the report was evidence. The assent was an individual, not an official act; and as against the sureties who had not assented to its truth, the report was not evidence.

There are several rulings of the circuit court not consistent with this opinion, and because of them the judgment must be reversed, and the cause remanded.