## James M. Lane, James C. Ralls, I. M. Samuels, Frank Belford, L. M. Carter, Louis Belford and John R. Phillips v. Polly Ann Tippy.

1. INTOXICATING LIQUORS—*Liability of Partners.*—Where two or more persons are partners in the business of selling intoxicating liquors, each of them is responsible for all the sales made in the prosecution of their joint business.

2. INTOXICATING LIQUORS—*Notice Not to Sell.*—No notice is necessary to prevent sales of intoxicating liquors to an habitual drunkard. The law prohibits such sales and gives all the notice necessary.

3. INTOXICATING LIQUORS—*Sales to Habitual Drunkard.*—The fact that a person may have been an habitual drunkard for years before the time sued for, is not a bar to the action to recover damages for sales to him. In such cases, the victim has the right to reform.

4. INTOXICATING LIQUORS—*Theory of the Prohibitory Law.*—The law prohibits the sales of intoxicating liquor to habitual drunkards, upon the theory that if they can not obtain liquor they can not become intoxicated, and that, in the course of time, they may recover the normal

condition of body and mind to such an extent as to be able to resist the temptation.

5. INTOXICATING LIQUORS—*Extent of Joint Liability.*—It is not necessary, in order to render persons jointly liable, to show that their sales must have begun at the same time and must have kept pace together to the end of the period sued for.

6. INTOXICATING LIQUORS—*Character of the Joint Liability.*—If the sales of intoxicating liquors began a few weeks, or even a few months before sales by others, yet, if the sales were continued contemporaneously for a period of time, all are responsible for the damages resulting, within reasonable limits.

7. INTOXICATING LIQUORS—*What Must Appear to Fix the Liability.*—Before a person can be held liable, it must appear that the liquor furnished by him was the efficient and proximate cause, either wholly or in part, of the intoxication complained of.

8. INTOXICATING LIQUORS—*The Risk Involved in Selling.*—The risk involved in selling intoxicating liquors, is known to persons engaged in such traffic, and is therefore voluntarily assumed when they engage in the business.

9. INTOXICATING LIQUORS—*Joint Liability in Suits for Civil Damages.*—In suits for damages arising from the sales of intoxicating liquors, it is not important that the several defendants have contributed in the same proportion to the injuries complained of. They stand upon the like footing as persons who are engaged in a joint tort, each being subject to liability for the whole damage.

**Memorandum.**—Action for damages caused by the sale of intoxicating liquors. Appeal from the Circuit Court of Williamson County; the Hon. JOSEPH P. ROBARTS, Judge, presiding. Heard in this court at the August term, 1893, and affirmed. Opinion filed March 23, 1894.

The statement of facts is contained in the opinion of the court.

DUNCAN & RHEA, attorneys for appellants.

YOUNG & BAKER and CLEMENS & WARDER, attorneys for appellee.

MR. JUSTICE SCOFIELD DELIVERED THE OPINION OF THE COURT.

The declaration in this case charged appellants with the sale of intoxicating liquors to appellee's husband, thereby causing him to become an habitual drunkard, and to squander his money and property as well as the property of his wife, to the injury of appellee in her property and means of support.

Appellants filed two pleas, the first, not guilty, and the second, the five years statute of limitations. A verdict was returned in favor of appellee for $400, and judgment was rendered against appellants for that amount, whereupon they prayed and perfected an appeal to this court.

It is not necessary to search the record to ascertain whether or not appellee's husband was an habitual drunkard, for appellants, on the 19th page of their argument, concede this fact in the following language : " That Tippy was an habitual drunkard, and had been for ten years or more, clearly appears from this record."

With this admission as a starting point, we proceed to the question whether or not all of the appellants assisted in keeping appellee's husband in a state of habitual intoxication, so as to make them jointly liable for the consequences. On the same page of their argument from which the foregoing quotation has been made, appellants make the further statement : " It also appears that some of the appellants have sold him (Tippy) intoxicants a number of times within the last year or two, prior to the bringing of this suit. But these facts, of themselves, do not make out a case of joint liability against all the appellants."

Proceeding upon the theory that if a judgment against many is erroneous as to one, it must be reversed as to all, appellants virtually admit that five of the seven appellants sold liquor to the appellee's husband with sufficient frequency to make them liable if the other elements of liability were proved, but they affirm that the other two appellants, L. N. Carter or Mark Carter and Frank Belford are not liable under the evidence, and that therefore the judgment, which is joint, must be reversed. On the 8th page of their argument, appellants say: " The only evidence of Mark Carter selling Tippy whisky is found in the testimony of Thomas Ice at pages 16 to 18 of the record." Appellants have read the record carelessly. N. W. Crain testified that he had seen Tippy drink tolerably frequently in a number · of saloons, among them, the saloon of Carter & Belford. (Rec. p. 46.) William Sanders testified that he had seen

Tippy drink whisky and beer frequently in Mark Carter's saloon. (Rec. p. 81.) Now, Mark Carter and Frank Belford were partners, during all the time Carter was in the business at all, and this partnership began about seven months prior to the commencement of this suit and was continued to the time of the trial. Each of them was responsible for all the sales made in the prosecution of their joint business. Therefore the testimony of Thomas Ice, N. W. Crain and William Sanders, applies to each of these two appellants. Then there is the testimony of Moody Cagle, that he had seen appellee's husband and George Sanders drink together several times in Frank Belford's saloon about one year before the trial; that Tippy was then "pretty drunk," and that Frank Belford "waited on them." (Rec. p. 117.) And yet appellants, on the 8th page of their argument, say: "The only evidence of Frank Belford furnishing him (Tippy) intoxicants, is in the testimony of N. W. Crain, at page 45 of the record."

In view of the foregoing admissions and evidence, it is apparent that every one of the seven appellants contributed materially to the habitual intoxication of appellee's husband, during the year or two preceding the commencement of this suit, to which period of time the mass of the testimony on this point is confined.

What do appellants themselves testify on the subject? Rolls and Samuels, whose liability is virtually admitted, swear that they did not sell to Tippy after his wife notified them to desist. The other five appellants, though sworn as witnesses, do not deny making the sales, but state that they had no notice from the wife not to sell to the husband. What notice was necessary? The law prohibits sales to an habitual drunkard. This man Tippy had been an habitual drunkard for years, and these appellants must have known the fact. The law and the fact gave all the notice which was required. We conclude that the evidence was sufficient to justify the jury in finding that every one of the appellants had sold intoxicants repeatedly to appellee's husband, and had contributed in a material degree to his habitual

intoxication. It is not the case of a single lapse on the part of some law-abiding vender of spirits, but of a frequent violation of the law by those who must have known Tippy's inclination to excessive indulgence.

The fact that Tippy may have been an habitual drunkard for years before the time sued for, is not a bar to this action. In such case the victim has the right to reform. The law prohibits sales to him upon the theory that if he can not obtain liquor, he can not become intoxicated, and that in the course of time he may recover his normal condition of body and mind to such an extent as to be able to resist the temptation.

Appellants are not charged with creating the appetite, but with fostering it. If they kept appellee's husband in a state of habitual intoxication for one or two years, they are responsible for the injury to the wife's means of support, thereby caused, even though the husband may have been an habitual drunkard before they began to sell to him.

It is contended, in effect, though not in exact terms, that in order to render appellants jointly liable, their sales must have begun at the same time and must have kept pace together to the end of the period sued for. Such a construction of the law would make it hopelessly inoperative, and must be made by a higher court than this, before it can be accepted here without question. If the sales of one appellant began a few weeks or even a few months before the sales of the others, yet if the sales were continued contemporaneously for a period of time, appellants are all responsible for the damages resulting within reasonable limits, and it is not necessary, with surgical precision, to sever the damages so that they may begin and end with the commencement and the cessation of contemporaneous sales. The well considered case of O'Halloran et al. v. Kingston, 16 Bradw. 659, is worthy of attention on this point. This was a suit for injury to the wife's means of support, arising from the habitual intoxication of her husband. Mr. Justice Wall, in whose views we concur, in delivering the opinion of the court, says:

It is urged that as to some of the appellants, the proof is

ot sufficient; that it does notshow that their sales contributed in any substantial or material degree to the habitual intoxication of the plaintiff's husband.  As already stated, we think this position not well taken.  It is shown that he visited all the places in question and obtained more or less liquor at each.  How much he obtained at each, and to what extent the act of each defendant contributed to the habitual intoxication, it is impossible to state with certainty.  The court instructed the jury, that before the defendants could be held liable, it must appear that the liquor furnished by them was the efficient and proximate cause, either wholly or in part, of the intoxication complained of.  This instruction was repeated in several different forms, and the jury must have understood the proposition therein contained. We are unable to disagree with their finding in this respect. It was no doubt to meet just such cases the statute was devised, when it laid its penalty upon the person or persons who may have caused the intoxication in whole or in part. And while those who contribute in a small degree, may be thus made to suffer as much as those who are more culpable, yet it is a condition which is applied to the traffic in liquors, which the legislature had the power to impose, and which the courts can not ignore.  It must be remembered also, that the risk thus involved was known to, and therefore voluntarily assumed by appellants when they engaged in the business, so that, in a legal sense, it can not be said that they are surprised by the enforcement of the law.

The last two sentences are quoted with approval in O'Leary et al. v. Frisbey, 17 Bradw. 553.  In this case the court approve of certain instructions in the following language:  " These instructions required the jury, before they could find for appellee, to believe from the evidence that her husband was habitually intoxicated, and that the appellant caused such intoxication, in whole or in part, by liquors sold or given to her husband, and that by means of such intoxication she was injured in her means of support. How much he obtained from each, and to what extent the act of each appellant contributed to the habitual intoxica-

tion, it is impossible to state with certainty, but under these instructions they were required to find that the liquor furnished by each of them was the efficient and approximate cause, either in whole or in part, of the intoxication complained of."

In Buckworth v. Crawford, 24 Ill. App. 603, the court say: "In suits to recover under Sec. 9 of the Dram Shop statute, the plaintiff may proceed against any and all persons, jointly or severally, who may have caused the intoxication in whole or in part, and in such cases it is not important that the several defendants have contributed in the same proportion to the injuries complained of, and they stand upon the like footing as persons who are engaged in a joint tort, each being subject to liability for the whole damage."

To the same effect is the holding of the Supreme Court, that where the declaration alleges that the husband's habitual intoxication was caused " in whole" by the defendant, a recovery may be had where the proof shows it was caused " in part," only, by the defendant.   Roth v. Eppy, 80 Ill. 283; Brannon et al. v. Silvernail, 81 Ill. 434.

Appellants refer to Tetzner et al. v. Naughton, 12 Bradw. 148, as sustaining their views of this case.   A careful examination of the Tetzner case will show that the actual point decided was, that where one loses his life by reason of a particular intoxication, and suit is brought to recover damages arising therefrom, those who caused the particular intoxication are not liable jointly with those who may have caused his previous habitual intoxication.   The soundness of this rule need not be discussed, for it has no application to the case under consideration, where the question is injury to means of support arising from habitual intoxication, and not a special loss resulting from a single act of intoxication.

Nor does the case of Westphal v. Austin, 41 Ill. App. 648, antagonize the views which we have expressed in this opinion. We would be loath to believe that the learned judge who wrote the opinion in that case, intended to state what counsel seem to read between the lines.   It is there held, that to make a liquor dealer liable under the statute, he must

create, or assist in creating, the very intoxication, habitual or otherwise, from which the injury follows. If one sells liquor to another, whereby the latter becomes an habitual drunkard, and then the seller ceases his sales, and a long time afterward others sell to the same person, and he contracts a disease from the latter sales which causes death, then the former offender is not liable for the injuries resulting from the drunkard's death. But what if the first seller had continued to sell to the moment of the victim's death; would not he and those who began to sell later, all helping materially to produce the disease and to hasten death, become jointly liable for resulting damages? We say, yes. Otherwise a plain statute is repealed by judicial construction.

Appellants contend, in the next place, that there is no proper evidence in the record to show that appellee was injured in her property or means of support. Without rehearsing the evidence, we deem it sufficient to state that we have carefully examined the record, and have found an abundance of evidence to show that appellee was injured in both her property and means of support during the year or two preceding the commencement of this suit.

Upon this point appellants make a special objection to the testimony of four witnesses—Moody Cagle, appellee, Wash Sisney and Pleas Cagle—who testified concerning the drowning of certain sheep in April, 1890, at a time when none of the appellants except Lane, was in the saloon business. When Moody Cagle testified as to the loss of the sheep, but one question was objected to, and that was not answered. (Rec. pp. 119 and 120.) The same is true of the testimony of appellee on this point. (Rec. pp. 185 and 186.) Wash Sisney and Pleas Cagle each testified as to the loss of the sheep, and gave some of the particulars of the accident. Then a wholesale objection was made, and a wholesale exception was taken. The statement of the record as to Sisney's testimony may be sufficient to show that a proper objection was made and exception taken to every question at the time when the same was propounded and held admissible. This is not true of Pleas Cagle's testimony. But if

Sisney's testimony were stricken from the record, the his-. tory of the loss of the sheep would be abundantly proved by evidence to which no proper objection was made. Aside from all this, no harm was done to appellants, inasmuch as the damages allowed by the jury are very moderate, and the allowance of a larger sum would have been justified by the evidence. Complaint is made of the rulings of the court in giving and refusing instructions. There are some inaccuracies in the instructions, it is true, but nothing of a sub-. stantial nature. The instructions given sufficiently stated the law to enable the jury to properly understand and decide the case.

We are satisfied with the verdict and the judgment is affirmed.