MARY KNOTT, Appellee, v. JOHN PETERSON, H. J. SCHNEEDE, and THE UNITED STATES FIDELITY AND GUARANTY COMPANY, Appellant.

**Intoxicating liquors:** ACTION ON BOND: PARTIES. In an action on a bond conditioned to pay all damages resulting from the sale of liquor, the principal is not a necessary party, nor is a judgment against him a condition precedent to the right of action on the bond.

**Evidence:** LIFE TABLES. In an action for permanent injury, or when death results from defendant's wrongful act, life tables are admissible to show the expectancy of life.

**Evidence:** RES GESTÆ. In an action on a liquor dealer's bond, against the surety alone, to recover for a death resulting from an unlawful sale by the principal, conversations with the principal, not a part of the *res gestœ*, are inadmissible.

**Unlawful sale of liquors:** DEFENSE. The fact that a husband failed to furnish his wife support, is no defense to an action for his death resulting from unlawful sales to him.

**Instructions:** DEATH A FACT ISSUE. In an action for a death from unlawful sale of liquor, the proximate cause of the death is one of fact, and it is error to instruct that certain facts, if shown, will establish this element of the case.

*Appeal from Lyon District Court.*— HON. WM. HUTCHINSON, Judge.

WEDNESDAY, OCTOBER 26, 1904.

ACTION at law to recover damages for the death of plaintiff's husband, due to his intoxication resulting from the unlawful sale of liquors to him by the defendant Peter-

son.   Defendant Schneede is made a party because of his
ownership of the property in which the liquor was sold, but
the case was dismissed as to him before submission to the
jury.   The United States Fidelity & Guaranty Company
was made a party by reason of its having executed a bond
as surety for Peterson, conditioned that it should pay all
damages resulting from the unlawful sale of liquors by him
at the place named in the petition.   Peterson was not served
with notice, and did not appear. - Schneede appeared and
answered, but the case was dismissed as to him.   The
Fidelity & Guaranty Company appeared, pleaded Peter-
son's full compliance with the "mulct law," and denied any
sales by him to plaintiff's husband.   It also pleaded that, as
Peterson was not made a party, no judgment could be ren-
dered against it on the bond.   These were the issues on
which the case was tried resulting in a verdict and judgment
for plaintiff, and the defendant the United States Fidelity
& Guaranty Company appeals.— *Reversed.*

*E. C. Roach,* for appellant.

No appearance for appellee.

DEEMER, C. J.— A number of points are made in ap-
pellant's argument, but, in view of the final disposition of
the case, we shall not consider all of them.

I.   As the bond was conditioned to pay all damages
resulting from the sale of liquors by Peterson, and not to
pay any judgment which might be rendered against him, and
Peterson and his surety were jointly and sev-
erally liable thereunder, there was no necessity
for making Peterson a party, nor for a judgment against
him as a condition precedent to a right of action against the
Fidelity and Guarantee Company.   This is fundamental doc-
trine.   Code, section 3465.   Section 2422 of the Code, im-
posing a statutory liability for judgments rendered against

1. ACTION ON
BOND: parties.

the principal, is not controlling; for it is the terms of the bond which are to govern in this case.

II.   Plaintiff produced a life insurance agent, who, over defendant's objections, testified that he was acquainted with the Standard Life Tables, and that they showed the ex-
2. EVIDENCE: pectancy of life in one seventy years as 7.54
Life tables. years.   He further said that all he knew about it was what the life tables showed, and that these were in print.   It is now claimed that these tables were themselves the best evidence, and that in such an action as this neither life tables nor oral evidence as to expectancy of life are admissible.   It is true that in one case we questioned the admissibility of such evidence in such actions as this.   *Rafferty v. Buckman,* 46 Iowa, 195.   But it is now generally held that life tables are admissible to show expectancy of life when the injury is permanent in character or death results from the wrong of defendant.   *Trott v. R. R.,* 115 Iowa, 80; *Allen v. R. R.,* 106 Iowa, 602; *Pearl v. R. R.,* 115 Iowa, 535.   This is the rule in other States in civil damage cases.   *Roose v. Perkins,* 9 Neb. 304 (2 N. W. Rep. 715, 31 Am. Rep. 409); *Davis v. Standish,* 26 Hun, 608.   However, the admissibility of the witness' testimony was doubtful, to say the least.   He had no personal knowledge, and merely stated the contents of written tables.   Some courts take judicial notice of what the life tables show, and it may be that we should do so in this case, and hold the error in receiving the witness' testimony to be without prejudice; but, without making any definite pronouncement upon the point at this time, it is sufficient to say that upon a retrial it would be safer to introduce the life tables themselves, rather than to permit witnesses to state their contents.   *Erb v. Popritz,* 59 Kan. 264 (52 Pac. Rep. 871, 68 Am. St. Rep. 362).

III.   Several witnesses were permitted, over defendant's objection, to detail conversations had with Peterson the day after plaintiff's husband's death.   These conversa-

tions were no part of the *res gestæ,* but related to the hus-

3. EVIDENCE: *res gestæ.*   band's condition the night before his death, what he (Peterson) did with him, and to the fact that he (Peterson) had given Knott, the husband, 50 cents and two bottles of beer the night before his death, and had taken him part way home.   Had they been part of the *res gestæ,* they would undoubtedly have been admissible as against the surety.   But evidently they were not.   They related wholly to a past transaction, and were no part of the main event — the death of Knott.   Declarations of a principal, in order to be admissible against his surety, must ordinarily be a part of the *res gestæ. Hatch v. Elkins,* 65 N. Y. 489; *Lee v. Brown,* 21 Kan. 458; *Chelmsford v. Demarest,* 7 Gray, 1; *Nichols v. Jones,* 166 Pa. 599 (31 Atl. Rep. 329). The bond was not to be responsible for any declaration or admissions of the principal, but for his conduct only.   Hence it is only his conduct in carrying on the business, or declarations accompanying his acts while so engaged, that are admissible in evidence against his surety.   *Bank v. Smith,* 12 Allen, 243 (90 Am. Dec. 144); *Trousdale v. Philips,* 2 Swan (Tenn.) 384; *Stetson v. Bank,* 2 Ohio St. 167; *Lewis v. Lee Co.,* 73 Ala. 148; *Cheltenham Co. v. Cook,* 44 Mo. 29. There are some cases which seem to hold that, when the suit is against the principal and surety jointly, an admission or declaration of the principal which is competent against him is also competent against the surety.   *Amherst Bank v. Root,* 2 Metc. 522; *Davis v. Kingsley,* 13 Conn. 285; *Singer Mfg. Co. v. Reynolds,* 168 Mass. 588 (47 N. E. Rep. 438, 60 Am. St. Rep. 417).   But these cases are exceptional in character, and are not recognized in all jurisdictions.   If the suit were against Peterson, so that a judgment might be rendered against him, we should be inclined to hold that testimony as to such admissions or declarations as were received in this case would have been competent, for, under section 2422 of the Code, to which we have referred, the defendant surety company would have been liable for any judgment which

might have been rendered against Peterson. But, where the action is against the surety alone, and it is to be held, if held at all, under the terms of its bond, we do not think that declarations of the principal as to past transactions not forming part of the *res gestæ* are admissible in evidence. See, as sustaining our conclusions, Elliott on Evidence, vol. 1, section 253; 2 Brandt, Surety and Guaranty, sections 624, 627. For the error in receiving this evidence the judgment must be reversed.

IV. As the case must be retried, there is one other point which should be considered. The testimony as to plaintiff's injury in her means of support fairly tends to show that, prior to the family's removal to the town of Doon, where Peterson conducted his saloon (which was some two years prior to the husband's death), he worked at his trade as a stone mason, and used his wages for the support of his family; that he drank some before going to Doon, but that after he went there he drank more than was his custom, and gave nearly all his money to the saloons; that he worked some at his trade, and did day's work at whatever he could get to do; that he drew a pension of $10 per month; that when he worked at his trade he could earn about $3 per day; and that little or none of his earnings were given his family after he went to Doon. There is, it is true, no direct evidence of any sales made by Peterson to plaintiff's husband except on the day preceding his death; but there is testimony that there were two saloons in Doon during the time plaintiff lived there, and that her husband spent his money thereat. Defendant contends that, as plaintiff's husband failed to furnish his wife support prior to any sales made by Peterson, she lost nothing through his death, but really is better off in consequence thereof. This argument is answered, we think, by what is said in *League v. Ehmke*, 120 Iowa, 464, wherein it is held, in effect, that, although the husband may have been a hard drinker before he purchased

*4. UNLAWFUL SALE OF LIQUOR: defense.*

liquor of the defendant, it did not follow that he would continue to be, or that he would have met his death notwithstanding defendant's sales. And we may remark parenthetically that the doctrine contended for by appellant is not sound either in morals or in law. One is not justified in causing loss of human life because that life may not apparently be of much consequence either to his friends or to his family. But for defendant's sales, the husband might have reformed, and returned to his old manner of living. Of course, reformations from the drink habit, after it becomes fixed, are infrequent; but this the jury was authorized to consider in making up its verdict as to damages. Plaintiff was entitled in law to the support of her husband, and, no matter how worthless that husband may seem to be, neither a saloon keeper nor any one else is justified in taking his life, and then saying that it was of no consequence anyway. See, as sustaining these views, *Dunlavey v. Watson,* 38 Iowa, 398; *Woolheather v. Risley,* 38 Iowa, 486; also *Rouse v. Melsheimer,* 82 Mich. 172 (46 N. W. Rep. 372), which is directly in point. Further, as more or less in point, *Hackett v. Smelsley,* 77 Ill. 109; *Ford v. Cheever,* 105 Mich. 679 (63 N. W. Rep. 975); *Lane v. Tippy,* 52 Ill. App. 532.

*Bellison v. Apland,* 115 Iowa, 599, relied upon by appellant, is not in point. There was no deprivation of future support in that case, as in this; and the instruction there given which was condemned, instead of referring to evidence of actual support, simply stated the duty that a husband was under, without reference to his ability to earn money and to support his family, or to the condition of his estate, etc. When loss of past support is counted upon, it may be that such a defense as was here relied upon would be availing; but not so where the action is for loss of future support. The jury was directed to consider the husband's age, habits of life, the amount he earned and was furnishing his wife for support at and before his death, in making up

its verdict, and this was all that defendant was entitled to. After all, it was and is a question for a jury.

V. Many instructions are complained of. Without setting them out, it is sufficient to say that the question of the approximate cause of Knott's death should have been left to the jury. It was purely a question of fact, and not of law, and the court was in error in telling the jury that certain facts, if shown, would establish this element of the case. The instruction as to plaintiff's right to recover, due to her loss of support, is not entirely clear. We see nothing therein for which we should reverse, if that were the only point in the case, but suggest that on a retrial the apparent conflict therein be eliminated.

5. INSTRUCTIONS: death a fact issue.

For the errors pointed out, the judgment must be and it is *reversed.*