500 P.2d 186

Herman WALTERS, Individually and as father, next friend and guardian of Wally Joe Walters, a minor, Plaintiff-Appellee and Cross-Appellant,

v.

Mannelyn HASTINGS and Manuel Hastings, Defendants-Appellees and Cross-Appellees,

v.

James L. Brown, Defendant-Appellant and Cross-Appellee.
No. 9335.

Supreme Court of New Mexico.
July 28, 1972.

Benjamin S. Eastburn, Farmington, for appellant.

White & Caton, Farmington, for appellees.

## OPINION

STEPHENSON, Justice.

Wally Joe Walters, minor son of Herman and Mary Jo Walters, was seriously injured in an automobile collision on March 1, 1969. He was a passenger in a car driven by Mannelyn Hastings, minor daughter of Manuel Hastings who owned the vehicle. Herman Walters and Manuel Hastings are brothers-in-law, having married sisters. The other vehicle was driven by a man named Spiller.

The senior Walters consulted Mr. Brown, an attorney, very shortly after the accident and employed him on a contingent fee basis. Whether this employment covered all claims arising from the accident and injuries, as asserted by Mr. Brown, or only the claim against Mr. Spiller, as asserted by Mr. Walters, forms the central issue of this lawsuit.

The contingent fee agreement ("the contract") was reduced to writing and signed by the attorney and clients, the latter having signed on March 5, 1969. The first paragraph of the contract provides:

> "The following are the terms under which we will undertake to represent you in connection with the accident and resultant injuries and damages which we have discussed."

Further provisions normal to such contracts follow. None of them bear upon the controversy.

Following execution of the contract, the facts of the occurrence were developed and the claim against Mr. Spiller was settled without suit with his liability insurer for the amount of the coverage. Mr. Brown received his fee in regard to this settlement.

Contacts between Mr. Brown and Mr. and Mrs. Walters were frequent from

March onward. Further information indicated that claims against others might be fruitful. Included among these were claims against Mr. Hastings, under the family purpose doctrine (his daughter, Mannelyn, had received a citation on account of the manner in which she had allegedly driven); a local automobile repair concern (based upon possible negligence in repairing the brakes of the Hastings car); and the manufacturer of the Hastings vehicle based upon the possibility of defective brakes.

Mr. and Mrs. Walters were unaware of the existence of any of these claims (including the Spiller claim), the legal theories upon which they were predicated, their possible efficacy or the amount which might be recovered from them until advised by Mr. Brown subsequent to the execution of the contract.

After the Spiller settlement was concluded, relations between the parties seemed to deteriorate. Mr. Brown advocated an attempt to realize on the claim against Mr. Hastings, or at least against his liability carrier. Mr. and Mrs. Walters indicated that this was out of the question because of the family relationship, although they lost little time in doing precisely that following Mr. Brown's discharge as we shall presently see.

Eventually the Walters decided to discuss the claim against Mr. Hastings directly with Mr. Jetter, adjuster for Mr. Hastings' liability insurer ("the adjuster"), expressing dissatisfaction with Mr. Brown's fee. Mr. Jetter was aware of Mr. Brown's representation of the Walters. Counsel were consulted as to how Mr. Brown could be discharged. On November 14, 1969, Mrs. Walters dictated a letter signed by Mr. Walters, discharging Mr. Brown. There appears to have been no assertion by the Walters up to that time that Mr. Brown had only been employed in relation to the Spiller claim or that the contract had been fully performed or was at an end.

Negotiations commenced between the Walters and the adjuster immediately. On December 18, 1969, Mr. Brown responded to the letter of dismissal. The response stated that if Mr. Walters did not wish to pursue the matter because of the family situation, he was willing that the matter be dropped; but if the claim against Mr. Hastings was pursued, he felt the contract should be honored.

In early 1970, the Walters and Mr. Jetter agreed on a settlement which included $5,688.10 for medical expenses incurred plus $3,000.00 for future medical expenses to Mr. Walters. $5,000.00 of medical expenses had already been paid under the medical payments provisions of the policy. The injured minor was to receive $20,000.00 for pain and disability.

Mr. Brown, learning of the agreement, filed a charging lien with the insurer. This "friendly suit" was filed to implement the settlement. One-third of the gross amount, the subject matter of this appeal, was paid into the registry of the court by the Hastings' insurer and a Petition for Interpleader was filed bringing in Mr. Brown and asking the court to declare the rights of the parties.

It was agreed at pretrial that Mr. Brown would be cast in the role of a plaintiff and Mr. Walters a defendant. The case was tried to a jury which rendered its verdict in favor of Mr. Brown in the sum of $2,000.00. He moved for judgment non obstante veredicto and, alternatively, for a new trial. The motion was denied and judgment was entered on the verdict. Mr. Brown appeals. Mr. Walters cross-appeals.

Mr. Brown has consistently asserted that the contract covered the claim against Mr. Hastings or his insurer. This assertion was advanced in a motion for summary judgment, was called to the attention of the court during the course of trial and culminated in a motion for judgment non obstante veredicto. With equal consistency, Mr. Walters has contended that the

contract was ambiguous as to what "claims" were covered. The court throughout held that the phrase "which we have discussed" rendered the contract ambiguous and that a question of fact was present as to whether the claim against Mr. Hastings was covered by the contract. Parol evidence was allowed on the issue of what "claims" were covered.

Many of our opinions deal with the admissibility of parol evidence and the purposes for which it may be admitted in construction of contracts.

In Maine v. Garvin, 76 N.M. 546, 417 P. 2d 40 (1966), this court stated the rule applicable to the admissibility of parol evidence:

"Parol evidence may not be received when its purpose and effect is to contradict, vary, modify, or add to a written agreement, but is generally admissible to supply terms not in the written contract, to explain ambiguities in the written agreement, or to show fraud, misrepresentations, or mistake."

The Maine case involved a contract of employment of a real estate broker. The contract authorized the broker to "sell" real estate. This court held that the contract was ambiguous because it was unclear whether the word "sell" contemplated an "exchange" of the real estate. See also Jernigan v. New Amsterdam Casualty Company, 69 N.M. 336, 367 P.2d 519 (1961).

If definition problems created by words used within the four corners of a contract create ambiguities requiring the admission of parol evidence, an even more compelling need for the use of parol evidence is presented when the words within the four corners of the contract make reference to activities or discussions not further explained. In Harp v. Gourley, 68 N.M. 162, 359 P.2d 942 (1961) the contract in question provided that the lessee was to pay the broker's commission in a "transaction" for the lease of real estate. Since the contract did not define or explain the extent of the "transaction" which formed the basis of

the contract, this court citing Wachs v. Wachs, 11 Cal.2d 322, 79 P.2d 1085 stated:

"The trial court should therefore have permitted appellant to plead and prove the surrounding circumstances, not for the purpose of varying the terms of the written instrument, but for the purpose of aiding the court in interpreting the contract of the parties as embodied in the written instrument."

■ In the case at hand, the contract in question refers to "the accident and resultant injuries and damages which we have discussed." The contract is ambiguous because it is impossible for a court to determine the precise terms of the contract by a mere examination of the instrument. Therefore, parol evidence was properly admissable to clarify the ambiguity, but it ought to have been restricted in such a way as to serve that function only.

■ The mere fact an ambiguity existed does not mean that the remaining portions of the contract should be laid aside and disregarded so that the unambiguous agreements of the parties are reformed by parol evidence.

■■ The principle applicable to determine the extent of admissability of parol evidence once an ambiguity has been found to exist in a contract was stated in Schwentker v. Hubbs, 21 N.M. 188, 153 P. 68 (1915):

"[P]arol evidence is admissible, in the construction of contracts, to . . . ascertain the signification which ought to be given to any phrase or term in the contract which is ambiguous or susceptible of more than one interpretation . . . Elliott on Contracts, § 1655, citing Browne, Parol Evidence, 179."

Thus, the function of the parol evidence admitted in this case should have been to clarify the ambiguity in the contract, giving effect to those portions of the contract which were not ambiguous and giving effect to the contract in its entirety so clarified. Any broader use of parol evidence would undermine the principle stated in the

Maine case, supra, that "parol evidence may not be received when its purpose and effect is to contradict, vary, modify, or add to a written agreement." For admission of parol evidence in the case of ambiguity serves explanatory and clarification purposes only.

■ An examination of the contract makes it very clear that the only ambiguity which arises from the phrase "which we have discussed" has to do with "the accident and resultant injuries and damages," the phrase which immediately precedes the ambiguity.

The evidence conclusively shows that the accident discussed was the one which occurred March 1, 1969, in which Wally Joe Walters was injured. The resultant injuries which were discussed were those which the minor received in the accident. The resultant damages discussed were those which accrued to the minor for pain and disability, and those suffered by the father for medical treatment and associated expenses. The evidence is clear on this score.

We recognize that in other situations where the evidence is in dispute or in doubt, the ambiguity must be resolved by the trier of the facts, but such is not the case here. The undisputed evidence here lends itself to resolution of the ambiguity as a matter of law. The first paragraph of the contract, with the ambiguity removed, should have been applied as though it read, in substance:

"The following are the terms under which we will undertake to represent you in connection with the accident which occurred on March 1, 1969, in which your minor son, Wally Joe, was injured and the resultant injuries to Wally Joe and damages which he, and you, have or will suffer."

Mr. Walters has consistently argued that an issue of fact existed as to what "claims" were covered and that the "claim" against Mr. Hastings was not agreed to be covered. The difficulty with this argument is that the contract, neither as written nor as clarified, is couched in terms of "claims." It is rather expressed in terms of the accident, injuries, and damages. There being no restrictive language as to what accident, injuries, or damages were covered it is not susceptible to the construction which Mr. Walters would place upon it.

We hold that the contract, with the ambiguity clarified and resolved by the undisputed evidence, as a matter of law, covered all claims arising from the accident and the resultant injuries and damages including the Hastings' claim.

Mr. Walters urges in the alternative that if the contract did cover the Hastings' claim, nevertheless Mr. Brown was discharged for good cause, and that there was substantial evidence from which the jury could have found that such was the case.

There is no question but that the Walters had the power to discharge their attorney, either with or without cause. In this, the parties are agreed. The issue is whether they were justified in doing so.

Mr. Walters predicates his claim that Mr. Brown's discharge was justified on three grounds, each of which he asserts is supported by substantial evidence. These grounds are:

■ A. Mr. Brown's delay in obtaining the money from the Spiller settlement for his client. Mr. Walters says that the case was settled on June 5, 1969, but that the funds were not actually disbursed until September of that year. The record shows that Mr. Brown agreed with the adjuster for Mr. Spiller's liability carrier that the policy limits would be paid in settlement on June 5. However, this was a settlement only in a limited sense. The documentation of the settlement was not agreed upon with the adjuster. Mr. Brown testified that the company's attorney, situated in another city, first wished to file a friendly suit to implement the settlement, since Wally Joe Walters was a minor. From this he was dissuaded by Mr. Brown. The company's attorney also wanted a release in ordinary form, but Mr. Brown was con-

cerned lest such a release discharge other parties against whom claims might exist, as, for example, Mr. Hastings. A form of documentation was ultimately agreed upon, prepared and executed. Finally, the company's attorney insisted upon the institution of guardianship proceedings, a procedure which Mr. Brown did not resist, and guardianship proceedings were prepared and instituted. It was only after these things had been accomplished that funds were requested and disbursed. This evidence was undisputed.

On the subject of unreasonable delay, Mr. Walters testified in response to a question as to whether he had any complaints about Mr. Brown's handling of the Spiller case:

A. "Not handling the case. I thought he took too long, but not being familiar with the legal transactions—I know at the time we was in straits for money. Our bills was—we had run out of money on Wally, and—"

There was no testimony to the effect that an unreasonable length of time was consumed in implementing the settlement. Nevertheless, Mr. Walters argues that " * * * the jury was entitled to believe that this could have been accomplished in a more brisk manner." If they did so believe, they would have predicated their belief on pure speculation.

We hold that there is no substantial evidence that there was any unreasonable delay by Mr. Brown in obtaining the settlement funds.

■ B. Mr. Brown delayed in notifying his client that an agreement for settlement had been reached. Mr. Brown stated that he advised Mrs. Walters immediately but that he had no specific recollection of the time this was done. Mr. Walters testified that he did not know of it for some time, but further said that he didn't know when he was notified of the Spiller settlement and that, although he didn't remember when he learned of it, it was possible that Mr. Brown's statements on this score were accurate.

We hold that this falls short of constituting substantial evidence that Mr. Brown unreasonably delayed in notifying his client that an agreement had been made, entirely apart from the fact that there is no evidence that such delay as may have occurred, if any, would have justified Mr. Brown's dismissal.

C. Mr. Walters urges that:

"Attorney Brown had attempted, over the objection of he and Mrs. Walters, to pursue the claim against Manuel Hastings, Mr. Walter's brother-in-law."

■ There is no evidence that Mr. Brown made any "attempts" to pursue the Hastings' claim. There is evidence that he counselled such a course or perhaps even urged it.

On November 14, 1969, Mr. Walters sent a copy of the letter discharging Mr. Brown to the adjuster. The Walters arrived in the adjuster's office to commence negotiating for settlement of the Hastings' claim with such dispatch that they arrived the same day as the copy of the letter.

There was no evidence that there was any impropriety on the part of Mr. Brown in counselling or urging the seeking of the settlement with Mr. Hastings' liability carrier. In fact, it could be urged, with a good deal of logic, that he would have been remiss in his duty had he not done so.

We are confronted with a situation in which Mr. Walters is saying that he was justified in discharging Mr. Brown because of the latter's urging pursuit of the Hastings' claim against Mr. Walters' wishes and then finding Mr. Walters three days later in the adjuster's office doing precisely that. This is too much for us to swallow. We hold that there was no substantial evidence of any justification in discharging Mr. Brown for his counsel regarding the Hastings' claim.

■ In addition to the deficiencies in the evidence that we have pointed out, Mr. Walters cannot successfully assert that he was justified in discharging Mr. Brown for another reason. No evidence was ten-

dered or admitted tending to show that Mr. Brown had "departed from the recognized standards of * * * practice in the community, or * * * neglected to do something required by those standards." Sanders v. Smith 83 N.M. 706, 496 P.2d 1102 (Ct.App.1972). While Sanders was a malpractice case, thus predicated on negligence, and this is not, nevertheless the analogy is clear. Mr. Sanders there and Mr. Walters here must prove some shortcoming in their attorney's professional activities in order to prevail. Sanders held that the attorney's failure to meet, or departure from, the prevailing standards must generally be established, by expert, i. e. by a lawyer's, testimony. The same is true when acts or omissions of a lawyer are advanced as justification for his discharge.

Here there was no testimony by any informed person—an expert—that based upon the facts established, the professional standards of Mr. Brown's activities were other than above reproach. For example, how could a jury know, or even form a reasonable impression, as to whether there was an unreasonable delay in obtaining the funds from the Spiller settlement? It could not.

We recognize that situations may arise in which the proof is so clear and obvious that a trial court could, with propriety, rule as a matter of law on whether the attorney met the standards. Central Cab Company v. Clarke, 259 Md. 542, 270 A.2d 662 (1970). Similarly, cases may arise in which the asserted shortcomings of the attorney are such that they may be recognized or inferred from the common knowledge or experience of laymen. Id. But this case does not fall within either of those exceptions. See Annot., 17 A.L.R. 3rd 1442 (1968).

Finally, we come to the measure of damages. Mr. Brown urges that where there is an agreement for a contingent fee and the contingency has happened, the attorney is entitled to recover the fee stipulated in his contract. Mr. Walters does not dispute the correctness of the law urged by Mr. Brown. He contents himself with reiterating that the contract did not necessarily cover the Hastings' claim and that there is substantial evidence to sustain the jury's verdict.

■ We are aware that the authorities on the subject are not harmonious. For example, in Fracasse v. Brent, 6 Cal.3d 784, 100 Cal.Rptr. 385, 494 P.2d 9 (1972), the majority held that an attorney discharged with or without cause is entitled to recover only the reasonable value of his services rendered to the time of discharge. The dissent urged that an attorney discharged without cause is entitled to recover the stipulated fee on the happening of the contingency. We mention this case as illustrative of these divergent views. We unhesitatingly adopt the reasoning of the dissent in that case.

The great majority of the better reasoned cases sustain the view that we adopt. In Friedman v. Mindlin, 91 Misc. 473, 155 N.Y.S. 295 (City Ct. of N.Y.1915), the court ruled that:

"Therefore, where, as here, the contract of retainer fixes the amount of the attorney's compensation, and the attorney has not offended, either through misconduct or neglect, the court has not the power, even though the case is settled, to reduce the amount fixed by the contract."

The court's rationale follows:

"An attorney, in accepting a retainer, must, upon grounds of public policy, take the chance of his client abandoning the litigation, in which case, notwithstanding his contract, he can recover only the reasonable value of such services as he has actually rendered (Andrewes v. Haas, 214 N.Y. 255, 108 N.E. 423), and of his client settling the litigation against his consent, to which, upon the same grounds, he will not be heard to object (Matter of Snyder [v. Foster], 190 N.Y. 66, 82 N.E. 742, 14 L.R.A. [N.S.] 1101, 123 Am.St.Rep. 533, 13 Ann.Cas. 441); but I do not think that, so long as he is

faithful to his trust, he should be held to assume the risk of his client discharging him at will and then paying him only for the services rendered up to the time of the discharge. If his compensation is to be thus subjected to the whim of his client, then it is useless for him to contract at all, since all contracts of this character, whatever their form, would be only unilateral in effect. I do not think that the legal profession should thus be shorn of its dignity, or that justice should be thus denied to those who themselves minister at the altar of justice. Presumably, the client, in contracting for professional services to be paid for upon a contingent basis and at a definite amount, does so because he believes it to be to his interest to make such an arrangement. The mere fact that he may later desire to have another attorney does not, in my opinion, afford an adequate reason why he should be relieved from his bargain, so long as no improper advantage has been taken of him in making the contract and his attorney observes good faith towards him afterwards."

In Dolph v. Speckart, 94 Or. 550, 186 P. 32 (1920), the court said:

"Written contracts should be construed from the standpoint of the parties when they were contracting, and be so interpreted as to give effect to all the provisions, if possible. (Citing cases). A party who has wrongfully broken a contract should not be permitted to reap advantage from his own wrong, by insisting on proof which by reason of his breach is unobtainable. (Citing cases). Where one employs an attorney and makes an express valid contract, stipulating for the compensation which the attorney is to receive for his services, such contract is generally speaking, conclusive as to the amount of such compensation. A client has the unquestionable right to terminate the relationship between himself and his attorney, yet where an attorney is prematurely discharged by the client, or is otherwise wrongfully prevented from performing the professional duties for which he was employed, without fault on the part of the attorney, the latter is entitled to compensation. This is so even though the arrangement was for a contingent fee, provided the contingency has happened. The client, by wrongfully preventing the performance of the acts which entitled the attorney to the specific compensation, becomes liable in damages in such amount."

See also, Jones v. Martin, 41 Cal.2d 23, 256 P.2d 905 (1953); Scheinesohn v. Lemonek, 84 Ohio St. 424, 95 N.E. 913 (1911).

Mr. Walters has cross-appealed, complaining of an instruction to the effect that Mr. Brown might be entitled to reasonable compensation for services even if discharged with valid cause. Inasmuch as we have held that, as a matter of law, no such cause exists we need not consider the cross-appeal.

Other contentions raised by the parties have been considered but in view of the disposition we make of the case, they need not be dealt with in this opinion.

Having held that the contract covered the claim against Mr. Hastings; that Mr. Brown's discharge was without justification; and that the amount to which Mr. Brown is entitled is that which is stipulated in the contract, there is no occasion for a retrial. The court below is directed to set aside its judgment and enter judgment in Mr. Brown's favor for the amount stipulated in the contract in respect to the Hastings' settlement, being the funds on deposit with the Clerk.

It is so ordered.

COMPTON, C. J., and OMAN, J., concur.