**Sue Ann BAKER, Appellant,**

v.

**Ralph D. BEAL et al., Appellees.**

**No. 56782.**

Supreme Court of Iowa.

Jan. 22, 1975.

Newport, Newport, Wine & Buzzell, Davenport, for appellant.

Betty, Neuman, McMahon, Hellstrom & Bittner, Davenport, for appellees.

Heard by MOORE, C. J., and MASON, REES, UHLENHOPP and REYNOLDSON, JJ.

REYNOLDSON, Justice.

Plaintiff's intoxicated husband, transported home by a bartender from the Kickapoo Tavern, Davenport, Iowa, at about 1:30 A.M. on July 2, 1967, apparently stumbled as he entered the house. He sustained severe lacerations when his arm went through a glass in the kitchen door and he died at about 3:00 A.M. the same morning.

Shortly after the funeral, plaintiff employed these defendant-lawyers, as they lat-

ter admitted, "to represent her interests for the purpose of recovering whatever amount she was entitled to recover from whomever was responsible to her under the statutes of the State of Iowa."

November 1, 1967, defendant Doyle was present when plaintiff's statement was taken by attorneys for Northwest Sportsmen's Club, Inc. For almost two years defendant-lawyers negotiated with the "dram shop insurance lawyers" but received an offer of only $1500 which plaintiff rejected.

Increasingly concerned, plaintiff telephoned a different lawyer who told her the two year statute of limitations was about to expire. She again contacted defendant Doyle's office. A zero-hour dram shop suit . was instituted July 2, 1969 against "Carl Haas d/b/a Kickapoo Tavern." This action, grounded on the "new" dram shop statute, § 123.95, The Code, 1966, prayed for $35,000 in damages for plaintiff's loss of means of support.

Haas filed a special appearance. August 8, 1969, these lawyer-defendants amended plaintiff's petition by adding Kickapoo Tavern and Northwest Sportsmen's Club, Inc., d/b/a Kickapoo Tavern as party defendants. All those defendants filed motions to dismiss. Haas' motion was sustained on the ground the petition did not allege Haas was a permittee or licensee as required by § 123.95. The amended petition was dismissed because the cause of action was barred by the limitation statute.

Plaintiff then commenced this legal malpractice action against these lawyer-defendants praying for $250,000 in damages. Following a non-jury trial the court filed extensive findings of fact and conclusions of law and held against plaintiff, who appeals. We reverse and remand for new trial.

Summarized, the following issues are presented for our review: 1) Did trial court err in holding plaintiff failed to prove her original action would have been successful absent defendants' negligence? 2) Did trial court err in finding there was no evidence

of the amount of support plaintiff lost by reason of her husband's death? 3) Did trial court err in holding defendants not negligent in failing to file suit under the "old" dram shop statute, § 129.2, The Code, 1966? 4) Did trial court err in holding defendants were not negligent in failing to properly assess plaintiff's damages in the dram shop action?

I. At close of plaintiff's evidence and at close of all evidence defendants entered motions to dismiss or for a directed verdict. Three months after trial, without reference to these motions, trial court proceeded to file "Findings of Fact, Conclusions of Law and Judgment Entry." Upon a careful study of this instrument, the motions, and the record, we are persuaded trial court did not rule on a motion for directed verdict, but rather determined the whole controversy on its merits. See Batliner v. Sallee, 254 Iowa 561, 564, 118 N.W.2d 552, 554 (1962). Its findings of fact have the effect of a special verdict and are equivalent to a jury verdict. Frantz v. Knights of Columbus, 205 N.W.2d 705, 708 (Iowa 1973). If supported by substantial evidence and justified as a matter of law, the judgment will not be disturbed on appeal. Rule 344(f)(1), Rules of Civil Procedure.

II. Plaintiff asserts trial court erred in holding she had not sustained her burden of proving her dram shop action would have been successful absent defendants' alleged negligence.

This plaintiff does not challenge the prevailing case law holding a client who seeks to recover against his or her lawyer in a malpractice action based upon negligent handling of a lawsuit for money damages must not only prove negligence but must also prove that, absent the lawyer's negligence, the underlying suit would have been successful. 7 Am.Jur.2d, Attorneys at Law § 190, pp. 157–58, and citations; Annot., 45 A.L.R.2d 5, 10, 19, and citations; Coggin, Attorney Negligence * * * A Suit Within a Suit, 60 W.Va.L.Rev. 225 (1958). Although no Iowa decision has directly held

that rule to be the law of this jurisdiction, it finds support in Getchell & M. Lumber & M. Co. v. Employers' L. Assur. Corp., 117 Iowa 180, 90 N.W. 616 (1902).

In holding plaintiff failed to establish a viable underlying dram shop case under the provisions of § 123.95, The Code, 1966, trial court relied on her omission to prove "the Kickapoo Tavern, whatever its correct corporate name may be, was or was not a licensee or permittee."

It is true only licensees and permittees are liable under § 123.95, The Code, 1966, which relevantly provided:

> "Every * * * wife * * * who shall be injured in * * * means of support * * * resulting from the intoxication of any * * * person, shall have a right of action * * * against any licensee or permittee who shall sell or give any beer or intoxicating liquor to any such person while he is intoxicated, or serve any such person to a point where such person is intoxicated for all damages actually sustained."

Plaintiff's petition in the case *sub judice* alleged Kickapoo Tavern was owned and operated by Northwest Sportsmen's Club, Inc. (which defendants admitted) and that corporation was licensee and permittee of Kickapoo Tavern (which was denied).

But plaintiff also alleged she relied on the legal competency of defendants in employing them "to represent her interests for the purpose of recovering whatever amount she was entitled to recover from whomever was responsible to her under the statutes of the State of Iowa," which was admitted in the answer, as were the allegations plaintiff thereafter assumed they were "diligently proceeding to negotiate a settlement with the various parties concerned, the identities of which Plaintiff left in the hands of the defendants to ascertain." Defendants' answer further admitted defendant Doyle was present on or about November 1, 1967 when plaintiff's statement was taken by attorneys representing Northwest Sportsmen's Club, Inc.

Finally, defendants conceded in the pleadings the dram shop action they brought was instituted under the provisions of chapter 123, The Code.

Thus defendants, who admittedly had two years to carry out their responsibility to determine the proper party or parties defendant in the dram shop case, and who negotiated with the dram shop insurance carrier, belatedly instituted action under § 123.95, The Code, 1966, which case could only lie against a permittee or licensee. Had there been no licensee or permittee the available action, of course, would have been under § 129.2, The Code, 1966 (since repealed, see Acts 64 G.A., ch. 131, § 152).

The above facts are undisputed. The only inference which can be drawn therefrom, assuming trial court drew any inference, militates against defendants. In these circumstances the restraints of the special verdict review referred to in division I apply neither to trial court's conclusions, Insurance Managers, Inc. v. Calvert Fire Ins. Co., 261 Iowa 155, 156, 153 N.W.2d 480, 481 (1967), nor to its application of rules of law, Disbrowe v. Tucker, 211 N.W.2d 318, 320 (Iowa 1973).

In a legal malpractice action against these defendant-lawyers we hold they shall not be heard to argue plaintiff's underlying dram shop case would not have been successful because she did not prove Kickapoo Tavern was operated by a licensee or permittee. For the purposes of this litigation, that element was sufficiently established by uncontroverted proof these defendants elected to bring the dram shop action under § 123.95, The Code, 1966. We will not assume after they had the case in their office for two years they selected a statutory cause of action upon which no relief could be granted. We hold plaintiff is entitled to the same presumption defendants rely on in another context: everyone is presumed to have discharged his duty, whether legal or moral, until the contrary is made to appear. Dorf v. Relles, 355 F.2d 488, 492 (7 Cir. 1966).

III. Closely allied to the issue treated in division II is plaintiff's assertion trial court erred in finding there was no evidence of the amount of support plaintiff lost by reason of her husband's death. Without citing any authority, defendants apparently urge that plaintiff has not established her underlying case until she has mathematically proved the exact amount of support her husband would have provided but for his untimely death.

In its factual finding trial court observed, "There was no evidence introduced as to how much of his [decedent's] income was or would have been used for the support of the Plaintiff or how much he did or would have used for the support of himself or to take care of his other financial obligations." The legal impact of this observation was not mentioned in trial court's conclusions of law, nor is there any other reference which would lead us to infer this lack of evidence formed a basis for the holding below.

However, as all parties assume this finding was a factor in the decision appealed from, we treat it as such. And in so viewing it, we are not persuaded plaintiff's burden was as onerous as defendants contend.

This court has frequently recognized the principle most recently restated in Northrup v. Miles Homes, Inc. of Iowa, 204 N.W.2d 850, 857 (Iowa 1973):

> " 'Courts have recognized a distinction between proof of the fact that damages have been sustained and proof of the amount of those damages. If it is speculative and uncertain whether damages have been sustained, recovery is denied. If the uncertainty lies only in the amount of damages, recovery may be had if there is proof of a reasonable basis from which the amount can be inferred or approximated.' "

See Patterson v. Patterson, 189 N.W.2d 601, 605 (Iowa 1971); Schmitt v. Jenkins Truck Lines, Inc., 170 N.W.2d 632, 655 (Iowa 1969).

In other situations damages necessarily are fixed and awarded without the requirement of mathematical certainty. See Pagitt v. City of Keokuk, 206 N.W.2d 700 (Iowa 1973) (loss to estate of minor for his wrongful death; and loss of services, companionship and society to parents); Carradus v. Lange, 203 N.W.2d 565, 570–571 (Iowa 1973) (pain and suffering).

■ Except where probability of a duplicate damage award exists, see DeWall v. Prentice, et al., 224 N.W.2d 428 (Iowa 1974), courts have permitted death awards to be measured and fixed without necessarily requiring mathematical proof of either the income decedent would have spent on himself or contributed to his family's support. See for example Soreide v. Vilas & Company, 247 Iowa 1139, 1152–1153, 78 N.W.2d 41, 49–50 (1956), a wrongful death case, where this court was confronted with the claim a jury had fixed excessive damages ("present worth of the estate he would reasonably be expected to save as a result of his efforts between the time of his death and the end of his natural life if he had lived"). The *Soriede* court fixed a remittitur with only the following facts available: decedent's life expectancy, education, monthly salary, ownership of a car, savings at death and work habits. This result was reached with no amounts in the record to show what portions of decedent's income would have been spent to support his wife and child.

Even more pertinent here is Knott v. Peterson, 125 Iowa 404, 408–410, 101 N.W. 173, 174–175 (1904) (overruled on an unrelated point in Cochran v. Lovelace, 209 N.W.2d 130, 133 [Iowa 1973]) where a widow sought damages for injury in her means of support against the company bonding the person whose allegedly unlawful liquor sales resulted in her husband's intoxication and death. The alcoholic husband had supplied little or no support to his family for two years. Nonetheless, the *Knott* court had no reservations in holding the issue of damages was for the jury:

"Defendant contends that, as plaintiff's husband failed to furnish his wife support prior to any sales made by Peterson, she lost nothing through his death, but really is better off in consequence thereof. * * * Plaintiff was entitled in law to the support of her husband, and, no matter how worthless that husband may seem to be, neither a saloon keeper nor anyone else is justified in taking his life, and then saying that it was of inconsequence anyway. (citing cases) * * *.

"The jury was directed to consider the husband's age, habits of life, the amount he earned and was furnishing his wife for support at and before his death, in making up its verdict, and this was all that defendant was entitled to. After all, it was and is a question for a jury."

See Iowa Uniform Jury Instructions, Instruction 16.5 "Dram Shop-Damages"; Schubert, The Iowa Dram Shop Act—Causes of Action and Defenses," 23 Drake L.Rev. 16, 26–29 (1973).

■ The record before trial court in the case before us discloses plaintiff and her husband were married in December of 1966 and lived at 2710 Jackson Avenue in Davenport, Iowa. He had three children, issue of a prior marriage, ages 12, 14 and 16. At the time of his death he was a journeyman carpenter earning approximately $4.29 per hour, a rate which would project an annual income of about $9000. Plaintiff's husband had earned between $8000 and $9000 the year before at the Peter Pan Bakery. He always made "very good money" and "was always a very good provider." Plaintiff was not employed and was being supported by her husband, who turned his check over to her. She paid the bills and $40·went to support his children by the prior marriage. He had indebtedness from that marriage and plaintiff paid an amount which he owed for income tax. When her husband died, plaintiff was 33 years old and had a life expectancy of 38.51 years. He was 37 years of age and had a life expectancy of 34.88 years.

Although a better record should have been made, we hold the facts before the court were minimally sufficient to permit it to determine plaintiff's damages as a result of her injury "in means of support," and as a consequence, to fix and award damages against these defendants if they were liable to plaintiff under the circumstances.

IV. Plaintiff contends trial court erred in finding defendants were not negligent in failing to assert an additional cause of action under the "old" dram shop statute, § 129.2, The Code, 1966. She argues this would have obviated the technicality of proving anyone was a licensee or permittee, and would have permitted an award of exemplary damages. All agree both § 123.95 and § 129.2, The Code, 1966, were available at that time. Wendelin v. Russell, 259 Iowa 1152, 147 N.W.2d 188 (1966).

Defendants argue the choice of theory upon which an attorney elects to proceed with litigation is a matter of judgment and plaintiff made no affirmative showing defendants were negligent in the exercise of this judgment.

It is true there is nothing in the record to chart the reasoning processes of defendants in electing to proceed solely on the "new" dram shop statute. Plaintiff did not pursue discovery processes nor call defendants as witnesses. Defendants did not testify in their own behalf, in fact, their only witness was plaintiff, called to testify concerning the terms of the contingent fee arrangement.

Further, plaintiff did not present expert testimony to establish any standard of care or other basis upon which the fact finder could evaluate defendants' professional activities in plaintiff's behalf.

It is the generally accepted rule that mere errors in judgment by a lawyer are not grounds for negligence, at least where the lawyer acts in good faith and exercises a reasonable degree of care, skill and diligence. See, e. g. Dorf v. Relles, supra, 355 F.2d at 492; Hodges v. Carter, 239 N.C. 517, 519–520, 80 S.E.2d 144, 145–146 (1954); An-

not., Attorney's Liability for Negligence in Preparing or Conducting Litigation, 45 A.L. R.2d 5, 11–14 (1956); 7 Am.Jur.2d Attorneys at Law §§ 170–171, pp. 148–149, and citations; 7 C.J.S. Attorney and Client § 141, p. 979, and citations; compare Case v. St. Paul Fire and Marine Insurance Company, 324 F.Supp. 352 (E.D.La.1971) (a case which seems to presume a lawyer must pursue all available remedies or be liable for resulting injuries to his client).

Courts generally recognize some malpractice cases may present situations in which the proof is so clear and obvious that a trial court could, with propriety, rule as a matter of law whether the lawyer met applicable standards. Central Cab Company v. Clarke, 259 Md. 542, 551–552, 270 A.2d 662, 668 (1970); Walters v. Hastings, 84 N.M. 101, 107, 500 P.2d 186, 192 (1972); see Kallem v. Kallem, 232 Iowa 1269, 1275, 8 N.W.2d 250, 252 (1943). Apparently trial court in the case *sub judice* applied the above rule to the other facet of defendants' alleged negligence, stating, "In any event, a claim against an attorney for malpractice based on his failure to sue under every available theory is not a matter of *obvious negligence, such as allowing the statute of limitations to run.*" (Emphasis added.)

Other cases may arise in which the asserted shortcomings of the lawyer are so plain they may be recognized or inferred from the common knowledge or experience of laymen. Central Cab Company v. Clarke, supra, 270 A.2d at 667; Walters v. Hastings, supra, 500 P.2d at 192. Our court has already adopted this rule in medical malpractice cases. Daiker v. Martin, 250 Iowa 75, 84, 91 N.W.2d 747, 751 (1958); Stickleman v. Synhorst, 243 Iowa 872, 878, 52 N.W.2d 504, 508 (1952).

The defendants' conduct in bringing suit only on the "old" dram shop statute does not fall within the ambit of either of the above rules.

As trial court observed, there were important distinctions between the "old" and

"new" dram shop statutes which could have furnished grounds for a reasoned election by defendants to proceed on one and not the other. These distinctions were identified in Wendelin v. Russell, supra, 147 N.W.2d at 194 and in the Note, Civil Remedies for Intoxication in Iowa, 13 Drake L.Rev. 168, 168–69 (1964). Among valid considerations which might have led defendants to the choice made in the underlying case was evidence upon which a fact finder could have determined plaintiff's husband became intoxicated on beer (not a ground for a § 129.2 action), and the possibility (because Berge v. Harris, 170 N.W.2d 621 [Iowa 1969] had not then been decided) that the defense of complicity was unavailable in a cause grounded on the "new" statute.

Under these circumstances, plaintiff was obligated to produce some testimony to show defendants' judgment in failing to file action on both statutes was so lacking as to constitute negligence. See Annot., Admissibility and Necessity of Expert Evidence as to Standards of Practice and Negligence in Malpractice Action Against Attorney, 17 A.L.R.3d 1442 (1968), and citations; Note, Standard of Care in Legal Malpractice, 43 Ind.L.J. 771 (1968).

Trial court rightly held, under this record, plaintiff failed to carry her burden in this respect. Pusey v. Reed, 258 A.2d 460 (Del. Super.1969); Wooddy v. Mudd, 258 Md. 234, 265 A.2d 458 (1970).

■ V. Plaintiff contends trial court should have determined defendants were negligent in failing to properly assess plaintiff's damages and in praying for an inadequate sum in the dram shop case. Since the action defendants attempted to bring was stillborn under the limitation statute it is apparent plaintiff suffered no harm by reason of the prayer of that petition.

The dram shop insurance carrier offered only a nominal sum in settlement of the underlying cause of action. We cannot conclude plaintiff was damaged by any alleged failure of defendants to properly evaluate her damages or to demand a larger judgment in the dram shop case. Assuming the truth of these charges, she was not prevented from establishing the actual extent of her alleged damages in this malpractice case.

■ In so stating, we do not intimate defendants were in any way negligent in praying for only $35,000 in the underlying suit. Trial court rightly found on this record these matters were within the area of a lawyer's judgment and an issue which, in absence of testimony relating to appropriate standards, the court could not determine.

Our attention has not been directed to any case in which a court has ever held an attorney negligent for not suing for enough money.

Plaintiff has established no error in this regard.

■ VI. For the first time in this litigation defendants on appeal raise the issue of plaintiff's alleged failure to prove that a recovery in the underlying dram shop case would have been collectible.

Defendants thus assert the widely accepted rule that solvency of the underlying defendant (or perhaps more precisely, collectibility of a potential judgment) must be proved by plaintiff in order to show damages proximately caused by defendant-lawyers' negligence. See Annot., 45 A.L.R.2d 62, 66; 7 Am.Jur.2d, Attorneys at Law § 190, p. 158; 7 C.J.S. Attorney and Client § 157, p. 998; but see Christy v. Saliterman, 288 Minn. 144, 179 N.W.2d 288, 293 (1970).

This question may have been overlooked by defendants in district court because of the negotiations with the Kickapoo dram shop insurance carrier and the statutory requirement that permittees and licensees furnish proof of financial responsibility. See § 123.95, The Code, 1966; § 123.92, The Code, 1973; Cochran v. Lovelace, supra. Neither in their motion for directed verdict nor in any other way did defendants

present this issue to trial court. Therefore it cannot be raised for the first time here. Northrup v. Miles Homes, Inc. of Iowa, supra, 204 N.W.2d at 859; Volkswagen Iowa City, Inc. v. Scott's Incorporated, 165 N.W.2d 789, 794–795 (Iowa 1969), and citations.

VII. Defendants, seeking to support the decision below, also assert plaintiff was guilty of complicity and therefore could not have recovered in the underlying action. Trial court recognized complicity as the major defense in this action but held it unnecessary to determine that issue, being content to turn the case on the fulcrum of plaintiff's alleged failure to prove a licensee or permittee, discussed in division II above.

The defense of complicity in a dram shop action existed under both the "old" and "new" statutes. See Berge v. Harris, supra. The rule in essence is, "a party who participates in the drinking activities during which the injuring party becomes intoxicated cannot recover under the dramshop act for injuries sustained as a result of such intoxication." *Berge*, supra at 625 of 170 N.W.2d, and citations.

■ Plaintiff argues complicity is an affirmative defense not pled by defendants. This position is well taken. Henschel v. Hawkeye-Security Insurance Company, 178 N.W.2d 409, 420 (Iowa 1970) ("[A]n affirmative defense is defined as 'one resting on facts not necessary to support plaintiffs' case.' ")

But it is also apparent these parties tried the issue by consent. See Roth v. Bluffs City Motors, Inc., 186 N.W.2d 634, 636 (Iowa 1971). When complicity was raised as a ground of defendants' directed verdict, plaintiff advanced no objection that the issue was not in the case, further indicating both parties deemed the question to be before the court.

We thus reach defendants' contention they were entitled to a ruling that the record disclosed complicity as a matter of law.

On this point we have said that only in an exceptional case will an affirmative issue, as a matter of law, be decided in favor of one who has the burden. Bessman v. Harding, 176 N.W.2d 129, 130 (Iowa 1970), and citations.

■ Applying this rule, it is apparent reasonable minds could differ as to plaintiff's complicity. The uncontested testimony of plaintiff and her witnesses was that she went to the Kickapoo with the intention of bringing her husband home. She repeatedly attempted to get him to leave the bar. Although she drank, she asserts she did so to avoid her husband's anger. He did not consume the drink he required her to purchase for him. During the time they were in two taverns he persistently ignored her presence and generally socialized with old friends.

The issue was plainly one for the fact finder.

VIII. When trial court erroneously determined plaintiff, under the circumstances of this case, was required to furnish direct evidence there was a dram shop licensee or permittee and had failed to do so, it became unnecessary to rule on the real fighting issue in the litigation: the matter of complicity. Because of our conclusion in division II, this and other unresolved questions must now be determined in conformance with this opinion. We reverse and remand for new trial on all issues. See Novak Equipment, Inc. v. Hartl, 168 N.W.2d 924, 927 (Iowa 1969).

Reversed and remanded.