Larry O. KURTENBACH, Appellant,

v.

Richard TeKIPPE, Appellee.

No. 59409.

Supreme Court of Iowa.

Nov. 23, 1977.

Dennis G. Larson and Paul D. Strand, of Strand, Anderson & Raduenz, Decorah, for appellant.

James E. O'Donohoe, of O'Donohoe, O'Connor & O'Donohoe, New Hampton, for appellee.

Heard by MOORE, C. J., and RAWLINGS, REES, UHLENHOPP and McCORMICK, JJ.

McCORMICK, Justice.

This is a legal malpractice action which was tried to the court. The trial court entered judgment dismissing the petition on the ground plaintiff Larry O. Kurtenbach failed to prove an attorney-client relationship existed with respect to the transaction upon which he sought to predicate defendant Richard TeKippe's liability. Kurtenbach contends the evidence established an attorney-client relationship as a matter of law and alleges other errors. We affirm the trial court.

 Our review of a law action tried to the court is governed by well established principles. The trial court's findings of fact have the effect of a special verdict. *Baker v. Beal*, 225 N.W.2d 106, 109 (Iowa 1975). When the trial court denies recovery because of a party's failure to carry his burden on an issue, we will not interfere unless we find the party carried his burden as a matter of law. The evidence in the party's favor must be so overwhelming that no other reasonable inference could be drawn. On review we examine the evidence in the light most favorable to the judgment. *Roland A. Wilson v. Forty-O-Four Grand*

*Corp.*, 246 N.W.2d 922, 925 (Iowa 1976). However, we are not bound by trial court determinations of law or precluded from inquiry into whether the trial court applied erroneous rules of law which materially affected its decision. *In re Estate of Northup*, 230 N.W.2d 918, 921 (Iowa 1975).

Kurtenbach was a New Hampton entrepreneur who held an Iowa securities sales license. TeKippe was a New Hampton lawyer who had been a high school classmate of Kurtenbach. They both officed in a building owned by Kurtenbach. Commencing in 1970 Kurtenbach employed TeKippe whenever he desired legal work to be done. TeKippe maintained a detailed ledger and charged Kurtenbach for the time he spent on each individual matter. TeKippe was not on retainer, and the parties did not have an express employment contract. TeKippe performed legal work for Kurtenbach only upon request.

In July 1971 Kurtenbach asked TeKippe to form two "corporate shells", one to be a manufacturer of fiberglass silos and the other to handle silo assembly, sales and service. Kurtenbach was sole incorporator. TeKippe drafted articles and obtained certificates of incorporation. Approximately one month later he prepared stock certificates showing Kurtenbach owned 900 common shares and Charles Haberly 100 common shares in each corporation.

. In March 1972 Kurtenbach told TeKippe he wished to activate the two corporations. He gave TeKippe the stock certificates and said he and Haberly were rearranging their interests so that new certificates would have to be prepared later. TeKippe prepared minutes, by-laws, and an "after-the-fact" subscription agreement to reflect corporate history. He delivered these documents to Kurtenbach.

In April 1972 Kurtenbach held meetings with prospective investors in the two corporations. At his request TeKippe prepared an agreement by which attendees promised not to disclose financial data revealed in the meetings. Kurtenbach obtained investments of approximately $50,000.

Then in August 1972 Kurtenbach went to TeKippe's office, acquired blank stubs and

certificates from TeKippe's wife, who was working as secretary in the law office, and used his corporate accountant's secretary in another office to fill out the certificates to reflect the new ownership interests. As a result, Kurtenbach owned 650 common shares, Haberly owned 80, and the investors owned the remaining 270 in each corporation.

No report of sale of stock was made to the commissioner of insurance as required by § 502.5(15), The Code, 1971. Subsequently the corporations became financially troubled. Several investors sued Kurtenbach and eventually obtained judgments against him on a theory of rescission because of his failure to report the stock sales. See § 502.23, The Code, 1971.

The present action was brought by Kurtenbach against TeKippe in an effort to recover losses resulting from the investor lawsuits which Kurtenbach alleged were incurred because of TeKippe's negligent failure to advise him of his obligation to report the sales.

Kurtenbach testified TeKippe knew of the stock sales, advised him regarding the mechanics of issuance of new certificates, and was directed to prepare the certificates to reflect the new ownership. A list of the new investors and the amounts of their investments was later found in one of the corporate files kept in TeKippe's office. Kurtenbach testified he gave it to TeKippe within two days of the sales. He also testified he obtained the blank certificates and had them filled in at his accountant's office because TeKippe failed to prepare them when he needed them.

TeKippe denied being advised or giving advice regarding the stock sales. His ledger showed he made no charge for such services although it noted delivery of the certificates. He said Kurtenbach did not tell him he planned to sell to outside investors and had told him the April meetings were with potential silo buyers. He testified Kurtenbach had access to his office and the corporate files, and he did not know the investor list was placed in one of the files. TeKippe denied being asked to prepare the

new certificates. He said he first learned of the sales in March 1973 when the investors asked for their money back.

Each party offered other evidence to support his testimony. In deciding the controverted issue whether an attorney-client relationship existed between them with respect to the stock sales, the trial court found TeKippe's evidence was credible and Kurtenbach's was not. The court held Kurtenbach failed to establish the requisite attorney-client relationship and entered judgment dismissing Kurtenbach's petition. This appeal followed.

Kurtenbach acknowledges the prerogative of the trial court to decide the credibility of witnesses. His principal contention on appeal is that he established the attorney-client relationship as a matter of law even under the version of the evidence accepted by .the trial court. This contention raises questions about principles governing the existence and scope of an attorney-client relationship as well as about application of these principles to the facts as found by the court. The other contention which we must address is that the trial court erred in rejecting the testimony of a rebuttal witness based in part upon observation of the witness at a pretrial conference.

■ I. *Proof of the attorney-client relationship.* A lawyer has a duty to his client to exercise ordinary care in handling the client's work. *Baker v. Beal*, 225 N.W.2d 106, 112 (Iowa 1975). Although we have not previously had occasion to say so, we believe this obligates a lawyer to use the knowledge, skill, and ability ordinarily possessed and exercised by members of the legal profession in similar circumstances. See *Cook, Flanagan & Berst v. Clausing*, 73 Wash.2d 393, 438 P.2d 865 (1968); cf. *Speed v. State*, 240 N.W.2d 901, 907–908 (Iowa 1976).

■ However, for this duty to arise it is necessary that an attorney-client relationship exist. This is the threshold requirement for a legal malpractice action. *Eckert v. Schaal*, 251 Cal.App.2d 1, 58 Cal.Rptr. 817 (1967), overruled on other grounds, *Neel v. Magana, Olney, Levy, Cathcart & Gelfand*, 6 Cal.3d 176, 98 Cal.Rptr. 837, 491 P.2d 421

(1971); *Ronnigen v. Hertogs*, 294 Minn. 7, 199 N.W.2d 420 (1972). It is this relationship which the trial court found did not exist but which Kurtenbach asserts was established as a matter of law.

■ An attorney-client relationship ordinarily rests on contract, but it is not necessary that the contract be express or that a retainer be requested or paid. The contract may be implied from conduct of the parties. *Healy v. Gray*, 184 Iowa 111, 168 N.W. 222 (1918). The relationship is created when (1) a person seeks advice or assistance from an attorney, (2) the advice or assistance sought pertains to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agrees to give or actually gives the desired advice or assistance. *Anderson v. Lundt*, 200 Iowa 1265, 206 N.W. 657 (1925). In appropriate cases the third element may be established by proof of detrimental reliance, when the person seeking legal services reasonably relies on the attorney to provide them and the attorney, aware of such reliance, does nothing to negate it. *Kukla v. Perry*, 361 Mich. 311, 105 N.W.2d 176 (1960); *Rice v. Forestier*, 415 S.W.2d 711 (Tex.Civ. App.1967).

■ In a legal malpractice action it is not sufficient merely to prove an attorney-client relationship existed with respect to some matters. It is necessary to establish that the relationship existed with respect to the act or omission upon which the malpractice claim is based. *Brandlin v. Belcher*, 67 Cal.App.3d 997, 134 Cal.Rptr. 1 (1977); *Henzel v. Fink*, 340 So.2d 1262 (Fla. App.1976); *Shropshire v. Freeman*, 510 S.W.2d 405 (Tex.Civ.App.1974); *Hansen v. Wightman*, 14 Wash.App. 78, 538 P.2d 1238 (1975).

■ In determining the scope of the attorney's duty, courts must give effect to the fiduciary role of the attorney and the heavy responsibility this imposes on him to represent and protect the client's interests with respect to the subject matter of the employment. *Healy v. Gray, supra; Jamison v. Weaver*, 81 Iowa 212, 46 N.W. 996 (1890). However, the attorney's duty to represent and protect his client does not

extend beyond reasonable bounds. Specifically, when a question arises as in the present case about the extent of a lawyer's duty to investigate or inquire about a client's transaction, the following principles are applicable:

> Under certain circumstances it may be the duty of the lawyer to investigate the facts applicable to a transaction and report the results to the client. * * * If the attorney should have inquired concerning the facts and did not, the client cannot be said to have been negligent in failing to disclose said facts. * * * However, an attorney need not inquire into matters that do not pertain to the discharge of duties that he has undertaken. * * * Likewise, an attorney need not make inquiry where the responsibility of the matter is assumed by the client. *Hansen v. Wightman*, 14 Wash. App. 78, 86, 538 P.2d 1238, 1245 (1975).

When reasonable minds could differ as to whether the evidence establishes an attorney-client relationship with respect to an act or omission upon which a malpractice claim is based, the issue must be resolved by the trier of fact. The facts found by the trial court in the present case are analogous to those in cases in which the requisite attorney-client relationship was held not to exist. See *Shropshire v. Freeman*, 510 S.W.2d 405 (Tex.Civ.App.1974), and *Brandlin v. Belcher*, 67 Cal.App.3d 997, 134 Cal.Rptr. 1 (1977).

Even though Kurtenbach employed TeKippe to do the legal work in setting up the corporations, the trial court found he intentionally kept TeKippe in the dark regarding the subsequent public stock sales. When he desired legal assistance he asked for it; he asked for none here. Moreover, because of his experience and training as a securities salesman he thought he did not need legal help in handling the sales. We do not believe the contrary and additional evidence relied on by Kurtenbach is so strong that the trial court was compelled as a matter of law to find TeKippe had a duty to advise Kurtenbach of his statutory obligation to report them. The court could reasonably find, as it did, that the stock sales did not pertain to the discharge of

duties TeKippe had undertaken and that he had no duty to investigate or inquire when responsibility for the transaction was assumed by Kurtenbach.

The trial court did not err in failing to hold the attorney-client relationship was established as a matter of law.

II. *The trial court's out-of-court observation.* In rejecting the rebuttal testimony of E. Ralph Walker, a Des Moines attorney who represented some of the investors in Kurtenbach's corporations, the trial court contrasted Walker's demeanor while testifying with his demeanor at a pretrial conference in the case. In assigning this conduct of the court as a ground for reversal, Kurtenbach relies on the principle which we have frequently applied in jury cases that a litigant is entitled to have his case determined solely upon evidence presented in open court. See *Kalianov v. Darland*, 252 N.W.2d 732, 737 (Iowa 1977). We have said the same principle binds trial judges sitting as triers of fact. *Miller v. Miller*, 202 N.W.2d 105, 109 (Iowa 1972).

While we do not believe the trial judge should have considered Walker's out-of-court demeanor, we hold reversible error did not result here. The court gave a second reason for rejecting Walker's testimony, its lack of materiality because it did not relate to whether an attorney-client relationship existed between Kurtenbach and TeKippe. Walker testified about alleged admissions made to him by TeKippe concerning his unfamiliarity with the statutory securities sales reporting requirement. We agree this testimony was not material to the issue on which the case was decided. On that basis we hold the trial court's consideration of Walker's out-of-court demeanor does not require reversal.

Although we have not discussed every argument advanced by Kurtenbach, we have considered them all and find no reversible error.

AFFIRMED.